REVISED October 27, 2009

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2009

Charles R. Fulbruge III
Clerk

No. 08-40803

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CIPRIANO RANGEL-PORTILLO,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DAVIS, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Defendant-appellant Cipriano Rangel-Portillo appeals his conditional plea of guilty on the grounds that the district court erred in denying his motion to suppress evidence obtained as the result of an unconstitutional stop by a United States Border Patrol agent. We find the district court erred in denying the defendant-appellant's motion to suppress, and accordingly, we vacate and remand.

I.

This case concerns the constitutionality of a Border Patrol stop near the Rio Grande City Wal-Mart store, just 500 yards from the Texas/Mexico border in Starr County, Texas. Based on his experience working along the border,[1] U.S. Border Patrol Agent Victor Soliz testified at the evidentiary hearing that the area around the Rio Grande City Wal-Mart store in Starr County is well-known for drug smuggling due to its close proximity to the border. Soliz also testified that the Wal-Mart parking lot was well-known as an area where illegal aliens were often smuggled into the United States from the Rio Grande River.

At approximately 10 a.m. on the morning of November 9, 2007, Soliz passed the Wal-Mart parking lot and observed two vehicles exiting the parking lot onto Highway 83. Because Soliz felt the passengers looked suspicious, he made a U-turn to get a better look at the two vehicles. Soliz recalled that one vehicle was a white pickup, and the other vehicle, a Ford Explorer, followed behind the pickup.

As the Explorer passed Soliz's patrol unit, Soliz made several observations about the driver and the three passengers. Soliz first noticed that the driver initially looked straight ahead, but when Soliz's patrol unit approached the Explorer, Soliz noticed that the driver looked at him and made eye contact. In contrast to the driver, Soliz observed that the three backseat passengers avoided eye contact, were "stone-faced," and looked straight forward. According to Soliz, "the passengers didn't look at [him]

---

[1] Soliz, at the time that he offered this testimony, was a six-year veteran of the United States Border Patrol in Starr County, Texas. In his six years with the Border Patrol, he has arrested over thirty individuals charged with illegally transporting undocumented workers.

enough and the driver looked at [him] too much." He further testified that the three backseat passengers were all wearing their shoulder seatbelts.

Soliz followed the Explorer for a couple more miles, noting that the backseat passengers never once conversed with each other and were sweating "pretty bad." Soliz also observed that the windows were rolled up and the passengers appeared "very stiff." Because the windows of the Explorer were not tinted, and because Soliz's border patrol unit rides higher than normal street vehicles, Soliz and his partner could see clearly into the backseat of the Explorer. Soliz noted that the floorboards of the Explorer were devoid of any Wal-Mart shopping bags.

Based on the aforementioned reasons, Soliz decided to stop the Explorer and conduct an immigration check. The driver of the vehicle, Rangel-Portillo, acceded to the stop without incident. Upon stopping the vehicle, Soliz discovered that all three passengers in the backseat were illegally in the United States.

As a result of the stop conducted on November 9, 2007, Rangel-Portillo was charged with one count for conspiracy to unlawfully transport undocumented aliens and two counts for unlawfully transporting undocumented aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), (a)(1)(A)(v)(II), and (a)(1)(B)(i). He subsequently filed a pretrial motion to suppress the evidence that the agents obtained as a consequence of his detention. He argued that the agents lacked reasonable suspicion to stop his vehicle and that the evidence that they recovered as a result of the stop therefore was inadmissible. The Government filed a response, and the district court held an evidentiary hearing on the motion to suppress.

The district court denied Rangel-Portillo's motion on its merits. In so ruling, the court relied on the following factors to determine that Soliz had reasonable suspicion to stop the defendant's vehicle: (1) the proximity of the

stop to the border; (2) the fact that Wal-Mart is frequently used as a staging area for alien smuggling and there had been numerous apprehensions of aliens in the area over previous months; (3) the fact that Soliz observed two vehicles driving in tandem; (4) the fact that the passengers of the Explorer failed to converse with one another and sat rigidly; (5) the absence of shopping bags in the Explorer; (6) the fact that the passengers were sweaty; (7) the fact that the rear passengers wore seat belts; and (8) the fact that the backseat passengers made no eye contact with Soliz, while the driver made repeated eye contact. The district court also denied the defendant's motion for reconsideration.

Rangel-Portillo entered a conditional plea of guilty to Count Two (charging unlawful transportation of undocumented aliens) of the original three-count indictment, pursuant to the terms of a written plea agreement. He has now timely appealed the district court's denial of his motion to suppress.

## II.

Rangel-Portillo argues on appeal that the district court erred when it denied his motion to suppress. "In reviewing a district court's denial of a defendant's motion to suppress, this court reviews factual findings, including credibility choices, for clear error, while we review legal conclusions de novo." United States v. Santiago, 410 F.3d 193, 197 (5th Cir. 2005); see also United States v. Rodriguez, 564 F.3d 735, 740 (5th Cir. 2009) ("The district court's overall finding that reasonable suspicion existed for the stop is a conclusion of law that we review de novo."). Thus, the question before this Court is whether the district court was correct in determining that Soliz had reasonable suspicion to stop the defendant-appellant's vehicle.

"To temporarily detain a vehicle for investigatory purposes, a Border Patrol agent on roving patrol must be aware of 'specific articulable facts'

together with rational inferences from those facts, that warrant a reasonable suspicion that the vehicle is involved in illegal activities, such as transporting undocumented immigrants." United States v. Chavez-Chavez, 205 F.3d 145, 147 (5th Cir. 2000). In considering whether the agent had reasonable suspicion to stop Rangel-Portillo's vehicle, "[n]o single factor is determinative; the totality of the particular circumstances known to the agents are examined when evaluating the reasonableness of a roving border patrol stop." United States v. Hernandez, 477 F.3d 210, 213 (5th Cir. 2007). "Factors that may be considered include: (1) the characteristics of the area in which the vehicle is encountered; (2) the arresting agent's previous experience with criminal activity; (3) the area's proximity to the border; (4) the usual traffic patterns on the road; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) the appearance of the vehicle; (7) the driver's behavior; and, (8) the passengers' number, appearance and behavior." Id. "No single factor is dispositive, and each case must be examined based on the totality of the circumstances known to the agents at the time of the stop and their experience in evaluating such circumstances." Rodriguez, 564 F.3d at 741.

We begin our analysis here by noting our appreciation of the difficult task our U.S. Border Patrol agents face along our nation's southern border. Our decision herein and the reasoning to follow does nothing to detract from the Court's respect for the challenges our agents face in attempting to secure our nation's borders. However, in evaluating the reasonable suspicion behind an agent's detention of a specific individual's vehicle, this Court must ensure that the basic precepts of the Fourth Amendment have been met. In some instances, the most efficacious of stops will not pass constitutional muster. This is one of those instances.

Upon review of the record, we conclude that the detention of Rangel-Portillo's vehicle lacked reasonable suspicion. While it is clear that the proximity of the stop to the border (in this case a mere 500 yards) is afforded great weight in this Court's Fourth Amendment analysis, it is equally clear that this factor alone does not constitute reasonable suspicion to stop and search an individual's vehicle. "Were we to rule otherwise, law enforcement agents would be free to stop any vehicle on virtually any road anywhere near the Texas-Mexico border." United States v. Diaz, 977 F.2d 163, 165 (5th Cir. 1992). This Court has consistently found reasonable suspicion concerning stops conducted near the border where other factors, in addition to the proximity of the stop to the border, also supported a finding of reasonable suspicion.[2] In the present case, however, there are no such additional factors.[3]

---

[2] See, e.g., Hernandez, 477 F.3d at 214 (finding reasonable suspicion where stop was conducted in close proximity to the border and the officer was acting off an anonymous tip); United States v. Jaquinot, 258 F.3d 423, 427-429 (5th Cir. 2001) (finding reasonable suspicion where "the precipitate events clearly indicated that the [defendant's] truck had traveled through an area very close to the border" and where the defendant, after noticing the officer, exhibited very unusual driving patterns); United States v. Zapata-Ibarra, 212 F.3d 877, 882 (5th Cir. 2000) (finding reasonable suspicion where stop was conducted in close proximity to the border and, in response to the officer's approach, the defendant "decelerated considerably and began "having a hard time keeping the vehicle within the lane itself.") (internal quotations omitted)); United States v. Villalobos, 161 F.3d 285, 288-290 (5th Cir. 1998) (finding reasonable suspicion where stop was conducted in close proximity to border, officer observed "unusual traffic patterns," and where officer concluded the "truck was suspicious because it displayed only temporary fifteen-day tags rather than a permanent license plate."); United States v. Nichols, 142 F.3d 857, 865-866 (5th Cir. 1998) (finding reasonable suspicion where stop occurred near the border and the defendant "swerved off the road twice while the agents were behind him.").

[3] The same applies with equal force to this Court's consideration of whether the stop was conducted in a "high crime area"— or in this instance, an area known for drug or illegal alien smuggling. See United States v. Morales, 191 F.3d 602, 604-605 (5th Cir. 1999) (concluding that while "[n]o single factor is determinative," reasonable suspicion existed where stop occurred in an area "notorious for alien smuggling and narcotics" and upon noticing the officer, the defendant did a "doubletake" and began "weaving back and forth across the line."). Absent some other contributing factor, merely driving in an area "notorious for alien smuggling," alone, does not constitute reasonable suspicion. Id.

The various supplemental factors the district court did cite to support its conclusion fail to contribute sufficient reasonable suspicion to satisfy the constitutional analysis. For instance, the district court noted that all of the passengers in the vehicle wore seatbelts, sat rigidly, refrained from talking to one another, and had no shopping bags. This Court, however, cannot infer reasonable suspicion from these factors since there is no rational reason to conclude that law-abiding citizens are less likely to wear their seatbelts or exit a Wal-Mart parking lot sans shopping bags. See United States v. Chavez-Chavez, 205 F.3d 145, 148 (5th Cir. 2000) ("A factual condition that is consistent with alien smuggling does not provide reasonable suspicion if that condition also occurs even more frequently in the law-abiding public.").

Thus, it is logical to conclude that none of these factors carry any weight since law-abiding individuals are just as likely, if not more likely, to wear their seatbelts, sit rigidly, and refrain from conversing with one another as they exit a Wal-Mart parking lot. The Court also notes that during the district court's evidentiary hearing, Soliz testified that in his experience, law-abiding individuals were just as likely to exit the Wal-Mart parking lot sans shopping bags as individuals attempting to smuggle undocumented aliens. Accordingly, none of these factors contribute the reasonable suspicion necessary to pass constitutional muster.

At oral argument, counsel for the Government asked this Court to defer to the agent's expertise in recognizing these factors as reasonably suspicious behavior. And while this Court certainly recognizes the deference due to an agent's expertise in patrolling the border, the Fourth Amendment requires that this Court draw the line at reasonableness. This Court cannot, in good conscience, conclude that the aforementioned law-abiding factors constitute adequate reasonable suspicion to warrant such an intrusion on an

individual's Fourth Amendment rights.   Individuals do not shed their constitutional rights with the click of a seatbelt.

Additionally, the district court supported its ruling by citing to the fact that the driver made eye contact with the officer, but the other passengers did not.  We attach no significance to this factual finding since this Court has previously held that "[w]hether a driver looks at an officer or not should not be accorded much weight." Chavez-Chavez, 205 F.3d at 149 (quoting United States v. Moreno-Chaparro, 180 F.3d 629, 632 (5th Cir.1998) ("we are persuaded in the ordinary case, [that] whether a driver looks at an officer or fails to look at an officer, taken alone or in combination with other factors, should be accorded little weight.")).  And since the driver's eye contact with the officer bears little to no weight on this Court's reasonable suspicion determination, it naturally follows that the passengers' failure to make direct eye contact with the agent should likewise be afforded little weight.

Furthermore, the fact that the appellant's vehicle may have exited the Wal-Mart parking lot at the same time as another vehicle adds no credible support to the district court's denial of the defendant's motion. See United States v. Melendez-Gonzalez, 727 F.2d 407, 412 (5th Cir. 1984) (holding that the "observation of two cars in proximity on a sparsely traveled road does not in itself justify a stop . . . [since a]bsent [such] connecting factors ... the proximity of the automobiles might seem ambiguous.") (internal quotations omitted).  Because this Court in Melendez-Gonzalez found that two cars traveling in tandem on an isolated road was not alone indicative of reasonable, articulable suspicion, it follows that two cars traveling in tandem while exiting a Wal-Mart parking lot, a parking lot that thousands of others cars exit daily, is similarly devoid of any constitutional significance. Reasonable suspicion cannot result from the simple fact that two cars are traveling on a roadway or exiting a parking lot, one in front of the other,

8

unless there are other "connecting factors" to establish that their simultaneous travel could rationally be considered suspicious. Id.

The final factual finding the district court cited in denying Rangel-Portillo's motion to suppress was the fact that the passengers in the backseat were sweating. This factor, if considered in conjunction with other factors that contribute to a reasonable suspicion finding–such as an anonymous tip, erratic driving, or unlawful driving–could reasonably lead an officer to believe there is sufficient suspicion to conduct a stop. In the present case, however, the only other factor cited by the district court that contributes to reasonable suspicion is the proximity to the border. And while driving unlawfully or erratically while sweating might warrant reasonable suspicion, simply sweating while driving near the Texas-Mexico border does not. This Court cannot conclude that an agent has reasonable suspicion to conduct a stop anytime an individual is sweating while riding in a vehicle in close proximity to this nation's southern border.

What is more indicative of a stop lacking in reasonable suspicion is not what is found in the record, but rather in this case, it is what is missing from the record. In the current case, there is no evidence that the officer observed the defendant driving erratically in response to observing his presence; the vehicle itself did not display any of the usual characteristics of a vehicle transporting illegal aliens[4]; the time of the stop was not suspicious[5]; and there

---

[4] See, e.g., United States v. Chavez-Chavez, 205 F.3d 145, 149 (5th Cir. 2000) (finding reasonable suspicion where "[t]he agents testified that the van appeared to have a modified suspension to prevent it from sagging, which is common in vehicles used to transport illegal aliens."); United States v. Morales, 191 F.3d 602, 607 (5th Cir. 1999) (finding reasonable suspicion where, among many factors, the vehicle defendant was driving "appeared to be heavily loaded.").

[5] See, e.g., Chavez-Chavez, 205 F.3d at 149 (finding the time of the stop contributed to a finding of reasonable suspicion since "the suspicion raised by the dirty appearance of the passengers is heightened given that the stop occurred at 8:00, decreasing the likelihood that they were returning from a day of outdoor labor.").

is no evidence to indicate that the officer received a tip from an anonymous informant.[6] The overwhelming absence of any of these additional factors– factors that this Court has consistently held are rationally related to a finding of reasonable suspicion– undermines the district court's conclusion that the officer had reasonable suspicion to stop Rangel-Portillo's vehicle. See Melendez-Gonzalez, 727 F.2d at 412 (noting the significance of "the absence in this case of certain factors which have been considered persuasive in the past in judging the validity of a stop by a roving patrol.") (internal citations omitted). In cases that "presen[t] no evidence of erratic driving . . . no features on the defendant's vehicle that would make it a likely mode of transportation for illegal aliens . . . [and] no tips by informants," this Court has been quite reluctant to conclude a stop was based on reasonable suspicion. Id. "The absence of these factors as well as the unpersuasive nature of the factors that were offered by the Government leads us to conclude that the stop in this case was illegal."[7] Id.

For the aforementioned reasons, we conclude that the agent's stop of the defendant-appellant's vehicle was without reasonable suspicion, and therefore, illegal. Accordingly, we find the district court's denial of the defendant-appellant's motion to suppress to be in error. We vacate and remand to the district court for further proceedings in accordance with this decision.

---

[6] See, e.g., United States v. Hernandez, 477 F.3d 210, 215 (5th Cir. 2007) (finding reasonable suspicion where, in a notorious smuggling route, the agent received a tip that "provided the color, number, and type of the vehicles" the agent stopped.).

[7] We note that the factors contained in this paragraph are not intended to constitute an exhaustive list of all factors that contribute to a reasonable suspicion finding. Likewise, it is not our intention to imply that these individually listed factors are necessary prerequisites to a court's finding of reasonable suspicion. Instead, these factors are merely offered as examples of the sorts of factors contained in cases that have previously survived constitutional scrutiny. It is in comparison to these more comprehensive records that the inadequacies of the instant record become readily apparent.