EDWARD C. PRADO, Circuit Judge,
dissenting.
Because this border-patrol stop occurred more than 200 miles from the U.S. — Mexico border based on little more than innocuous, safe, lawful driving behavior, I respectfully dissent. Cervantes was driving his five-seat Chevrolet Trailblazer SUV eastbound with five passengers at 8:30 a.m. on a Wednesday morning. When border patrol drove up behind him, he changed lanes from the left lane to the right line behind a slow-moving 18-wheel semi-truck. The SUV slowed to match the truck’s speed. The border patrol agent then pulled up alongside the left side of Cervantes’s SUV, boxing Cervantes in— with an 18-wheel truck in front of him, a border patrol car to his left, and the road shoulder to his right. The border patrol agent honked his horn, but Cervantes kept his eyes on the road. These facts — considered together as part of the totality of the circumstances and examined charily due to the substantial distance, between the stop and the border — do not support reasonable suspicion that Cervantes had smuggled aliens or contraband across the- U.S.-Mexico border.
*340 We confronted a strikingly similar situation, and reached a conclusion opposite from the majority opinion, in a case involving a border-patrol stop of a vehicle that was also travelling eastbound on this very stretch of highway on a weekday morning. United States v. Olivares-Pacheco, 633 F.3d 399, 401 (5th Cir.2011). We not only held that the stop was unconstitutional because the border patrol agents lacked reasonable suspicion, we also characterized the case as presenting “facts of an unprecedented suspicionless nature.” Id. at 409. Because this case is materially indistinguishable from Olivares-Pacheco, I would hold that the agents lacked reasonable suspicion for the stop that resulted in Cervantes’s conviction, and I would vacate his conviction and sentence.
As elaborated below, the majority opinion stumbles in two important respects. First, the opinion does not give the substantial 200-mile distance of the stop from the border the paramount weight this factor warrants under our case law. 200 miles is a substantial distance that significantly undercuts the vital element of the Brigno-ni-Ponce test: whether the car had come from the border. Second, the majority opinion attributes suspiciousness to safe driving in the circumstances.
I. PROXIMITY TO THE BORDER IS A PARAMOUNT FACTOR, AND 200 MILES FROM THE BORDER WEIGHS HEAVILY AGAINST REASONABLE SUSPICION
We weigh the eight factors outlined by the Supreme Court in United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) to determine if border patrol agents on roving patrol had reasonable suspicion to stop a vehicle. United States v. Garza, 727 F.3d 436, 443-44 (5th Cir.2013), cert. denied, — U.S. -, 134 S.Ct. 1346, 188 L.Ed.2d 350 (2014). These factors include:
(1) proximity to the border;
(2) known characteristics of the area in which the vehicle is encountered;
(3) usual traffic patterns on the particular road;
(4) the agent’s previous experience in detecting illegal activity;
(5) information about recent illegal trafficking in aliens or narcotics in the area;
(6) particular aspects or characteristics of the vehicle;
(7) behavior of the driver; and
(8) the number, appearance, and behavior of the passengers.
United States v. Zapata-Ibarra, 212 F.3d 877, 881 (5th Cir.2000) (citing United States v. Orozco, 191 F.3d 578, 581 (5th Cir.1999)).
These factors are not entitled to equal weight. This Court has repeatedly stated that “[t]he first factor, proximity to the border, is a ‘paramount factor’ in determining reasonable suspicion.” Orozco, 191 F.3d at 581; accord Garza, 727 F.3d at 441; Zapata-Ibarra, 212 F.3d at 881. “[A] vital element of the Brignoni-Ponce test is whether the agent had ‘reason to believe that the vehicle [in question] had come from the border.’ ‘[Tjhis element [is] ... missing where the stop has occurred a substantial distance from the border.’ ” United States v. Garcia, 732 F.2d 1221, 1223 (5th Cir.1984) (second alteration in original) (emphasis added) (quoting United States v. Lamas, 608 F.2d 547, 549 (5th Cir.1979)).
The “paramount” proximity-to-the-border factor weighs so heavily in the reasonable-suspicion analysis that, if the distance from the border is as substantial as in this case, we examine the remaining seven factors and the evidence charily, with skepti *341 cism toward the Government’s justification for the stop. See Olivares-Pacheco, 633 F.3d at 409 (“Proximity to the border is a ‘paramount factor,’ and, again, we must look at the other evidence charily if such proximity is not present.”).
The majority opinion errs by not giving this paramount factor the consideration it warrants under our case law. We have been skeptical toward border patrol agents’ justification of reasonable suspicion this far from the border for good reason: Upholding a border-patrol stop on these facts — changing lanes behind á 18-wheel semi-truck, slowing to match that truck’s speed, and not looking at a honking car to your left this far from, the border — could subject millions of safe drivers to potential privacy intrusions.[69] Major cities that no one would consider “border cities,” such as Los Angeles, San Antonio, and Phoenix are all closer to the U.S. — Mexico border than Penwell, Texas and this particular stretch of Interstate-20. The overwhelming majority of drivers headed eastbound on the Interstate in these metropolises have not crossed the U.S.-Mexico border during their journeys, and many — if not most — of these drivers have changed lanes behind a slow, 18-wheel semi-truck to allow a faster moving car to pass on the left.
II. Examining the EVIDENCE and REMAINING Factors Charily, as We Must, the Officers Lacked Reasonable Suspicion to Stop the Car
Examining the factors and evidence skeptically, I would hold that the border patrol agents lacked reasonable suspicion to stop the car. Cervantes was driving eastbound on Interstate-20. The officers checked the car’s registration before stopping the car and determined that the car was registered in Morton, Texas. Thus, the direction that the car was travelling would have taken the car toward Morton, which is north of Odessa. This fact undercuts the agents’ basis for the stop. See Olivares-Pacheco, 633 F.3d at 404-05 (rejecting the agents’ justification in part because “the vehicle was registered ... in the greater Dallas area, wholly consistent with the truck’s direction”). Moreover, the stop occurred at about 8:30 a.m. on a Wednesday, not in the dark of night. This fact also cuts against reasonable suspicion. See id. at 405 (rejecting the agents’ justification in part because the stop “occurred on a Monday at 10:30 A.M., not in the dark of night”). Cervantes’s SUV also did not appear dirty or covered in brash — which would have been consistent with having “gone off road” — a fact that also weighs against suspicion.
There are facts that support the border patrol agents’ suspicion in this case as well. The agents testified that Cervantes’s SUV was driving on an alien-smuggling route and appearing to carry a heavy load. The SUV contained one driver and five passengers, even though there were only enough seatbelts to accommodate one driver and four passengers (one passenger was seated in the cargo area). Four of the occupants appeared to be “dirty.” From this, the experienced officers — Agent Collier has sixteen-plus years’ experience as a border patrol agent, and Agent Ramirez has eleven-years’ experience — suspected illegal alien smuggling.[70]
*342 On balance, however, these facts and the totality of the circumstances do not establish reasonable suspicion. The most important factor — proximity to the border— weighs against reasonable suspicion because the stop occurred more than 200 miles from the border. See Olivares-Pa-checo, 633 F.3d at 402, 409; Orozco, 191 F.3d at 581. Though we view the evidence in the light most favorable to the Government, we also must examine the remaining factors with skepticism this far from the border. See Olivares-Pacheco, 633 F.3d at 409. As elaborated below,[71] Cervantes’s driving behavior was safe, not suspicious. He was driving toward the city in which the car was registered at 8:30 a.m. on a weekday morning. The SUV showed no indication of having recently driven off-road. Although the car appeared heavily loaded and had one more passenger than available seatbelts, travelling with multiple occupants in an SUV is not suspicious. Olivares-Pacheco, 633 F.3d at 405 (concluding that “the number of persons in the truck — six—was neither illegal nor excessive”).
Finally, although in the past this Court has accepted testimony that this part of I-20 is an alien-smuggling corridor as supportive of reasonable suspicion, we have more recently given this factor minimal weight on this particular stretch of highway. Id. We reasoned that “the overwhelming majority of the traffic on this stretch of 1-20 is unquestionably legal and the government has not shown that aliens are more or less likely to use Intérstates than back roads.” Id. The same applies here because, as in Olivares-Pacheco, the Government does not point to evidence in this case establishing that alien smugglers are more likely to use Interstates than backroads.
A. The Driving Behavior Was Lawful and Safe, Not Suspicious
The majority opinion errs by ascribing suspiciousness to safe and lawful driving behavior. Of course, as the majority opinion notes, “[fjaetors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers.” Olivares-Pacheco, 633 F.3d at 402 (internal quotation marks omitted).[72] And the Supreme Court has rejected a “divide- and-conquer analysis” for assessing reasonable suspicion, noting that factors which by themselves may be “quite consistent with innocent travel” may collectively amount to reasonable suspicion. United States v. Arvizu, 534 U.S. 266, 274-75, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting, in a parenthetical, United States v. Sokolow, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).
But we have also held that facts that are consistent with alien smuggling do not provide reasonable suspicion if those factual conditions also occur even more frequently in the law-abiding public. United States v. Rangel-Portillo, 586 F.3d 376, 381 (5th *343 Cir.2009) (citing United States v. Chavez-Chavez, 205 F.3d 145, 148 (5th Cir.2000)). Rangel-Portillo illustrates how innocuous facts considered together as part of the totality of the circumstances may not support reasonable suspicion. There, we confronted a similar scenario; however, the stop occurred much closer to the border— just 500 yards away. See id. at 378. As in this case, there, the border patrol agents stopped a Ford Explorer SUV fully loaded with passengers. Id. The SUV pulled into a Wal-Mart parking lot in Rio Grande City, Texas that was well-known for alien and drug smuggling. Id. The SUV contained three passengers in the back seat, and the driver “made eye contact” with the agent but the backseat passengers “avoided eye contact, were ‘stone-faced,’ ... looked straight forward,” and “were sweating.” Id. The district court denied the motion to suppress based on, inter alia, the fact that the SUV passengers “failed to converse with one another and sat rigidly,” the absence of shopping bags in the SUV, the sweaty appearance of the passengers, and the fact that the rear passengers wore seatbelts. Id. at 379. We reversed and vacated the conviction and sentence. Id. at 383.
We stated that “there is no rational reason to conclude that law-abiding citizens are less likely to wear their seatbelts or exit a Wal-Mart parking lot sans shopping bags” than someone smuggling aliens or contraband. Id. at 381. We rejected the Government’s invitation to defer to the agent’s expertise in recognizing reasonably suspicious behavior and explained: “Individuals do not shed their constitutional rights with the click of a seatbelt.” Id.

1. Allowing a Car to Pass on the Left Is Not Suspicious

Just as individuals do not shed their constitutional rights with the click of a seatbelt, individuals do not also shed their constitutional rights by changing lanes on a two-lane highway to allow a fast-approaching car to pass on the left.[73] Agent Ramirez testified that he rapidly accelerated his patrol car to catch up to Cervantes. In response to a fast approaching car in the left lane, Cervantes naturally changed lanes to the right lane and slowed down to match speed with a slow moving 18-wheel semi-truck. As in Rangel-Portillo, “there is no rational reason to conclude that law-abiding citizens are less likely” to change lanes in this manner than someone smuggling aliens or contraband. See 586 F.3d at 381.

2. Failing to Acknowledge Horn Honking Does Not Create Reasonable Suspicion in These Circumstances

The border patrol agents also attempt to justify their suspicion by pointing out that, after they pulled into the left lane beside the SUV — boxing in Cervantes with the big-rig truck close in front — they honked their horn six times and Cervantes did not look over.
The horn honking does not contribute to reasonable suspicion. This does not appear to be a technique these agents have found, based on their training and experience, to be indicative of criminal activity afoot. Agent Collier could not say whether it is “unusual for someone to ignore ... honking of a car.” On cross-examination, Agent Collier admitted: “[Border Patrol] have not used [horn honking] a whole bunch.... I have not honked the horn *344 very many times.” There is also no ease law supporting the proposition that failing to heed the honking of an adjacent car’s horn is inherently suspicious.[74] Considering that Cervantes’s car was following a 18-wheel semi-truck at speeds approaching 70 miles per hour, boxed in by a border patrol car to his left and the shoulder to his right, the totality of the circumstances indicate that it was reasonable— even advisable — for Cervantes to keep his eyes on the road. Additionally, this Court has repeatedly rejected border patrol agents’ conclusions drawn from eye contact when asked to evaluate the reasonableness of a border-patrol stop. See, e.g., Olivares-Pacheco, 633 F.3d at 403 (“The avoidance of eye contact ... is not entitled to any weight.”); Rangel-Portillo, 586 F.3d at 381 (same); see also Chavez-Chavez, 205 F.3d at 149 (“Whether a driver looks at an officer or not should not be accorded much weight.”).'

3. Context Matters in Assessing the Totality of the Circumstances

Deceleration and failure to acknowledge a law-enforcement vehicle may reasonably be suspicious in some circumstances — but the context matters. Courts have agreed with law enforcement that such behavior is suspicious on secluded roads, but not necessarily on busy highways. See, e.g., Arvizu, 534 U.S. at 275-76, 122 S.Ct. 744 (“We think it quite reasonable that a driver’s slowing down, stiffening of posture, and failure to acknowledge a sighted law en-, forcement officer might well be unremarkable in one instance (such as a busy San Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern Arizona).” (emphasis added)). Here, there is no evidence in the record that 1-20 outside of Midland — Odessa during rush hour on a Monday morning is similar to a remote portion of rural southeastern Arizona. On the contrary, the agents testified that during this time of day, this portion of 1-20 experiences heavy traffic from oil-field workers headed to work.
The totality of the circumstances here— a two-lane highway with a fast-approaching car in the left lane and a slow-moving 18-wheel semi-truck in the right lane— indicate that Cervantes was driving-safely and not suspiciously. The majority opinion errs by accepting the border patrol agents’ attempt to justify reasonable suspicion based on Cervantes’s driving behavior in isolation, even though law-abiding citizens are just as likely to drive as Cervantes did in these circumstances. See Rangel-Portillo, 586 F.3d at 381.
B. Case Law Illustrates Why Reasonable Suspicion Is Lacking Here
This case is materially indistinguishable from Olivares-Pacheco. As in this case, in Olivares-Pacheco, we assessed a border-patrol stop of a vehicle travelling on the same stretch of highway, in the same direction, and at the same time of a weekday. 633 F.3d at 401-02. We explained that “the fact that Olivares-Pacheco was nowhere near the border makes our decision a much easier one. Indeed, of the cases in which the vehicle was stopped far from the border, the articulated reasons *345 for suspicion were far greater than in the instant ease.” Id. at 406, 409 (referring to Orozco and Morales among other cases). Not only did we reverse the district court’s denial of the defendant’s motion to suppress, we said the case was not particularly close: “We are satisfied that, if we were to side with the government in this case and affirm the district court’s denial of the defendant’s motion to suppress, we would be doing so on the barest articulation of facts that we have ever credited as constituting reasonable suspicion.” Id. at 409 (emphasis added).
Moreover, the majority opinion’s reliance on Orozco and United States v. Morales, 191 F.3d 602 (5th Cir.1999) is misplaced, and the striking differences between those cases and this one illustrate why the agents lacked reasonable suspicion here. In both cases, the circumstances were far more suspicious than this case. In Orozco, unlike in this case, the arresting officer testified that he had personally apprehended twenty loads of illegal aliens in the same area in the previous five months and knew that a majority of the transporters of aliens passed through this particular stretch of 1-20 on weekends between 9 a.m. and 10 a.m.— precisely the same time that the defendant was stopped. 191 F.3d at 582. The agent testified that he “noticed that the truck bed was completely covered by a tarp,” and that “the spare tire was placed in the back seat of the truck as if to make room for a large amount of cargo in the bed of the truck,” both of which are “common technique[s] employed by smugglers to hide illegal aliens.” Id. Facts like these are entirely missing in this case. Further, the observed driving behavior in Orozco was objectively erratic: “the truck was weaving and bouncing on the road.” Id. And unlike the agents’ vague testimony of “sagging in the rear” in this case, the agents in Orozco specifically testified that they observed “that the tires were under inflated — suggesting the truck bed was carrying a heavy cargo.” Id.
Morales is also .a far cry from this case. The vehicle in Morales bore the hallmarks of an alien-smuggling truck: the agent testified that “[t]he pickup truck had a fiberglass cover over the truck bed,” and that “the cover was almost flush with the top of the sides around the bed.” 191 F.3d at 605, 607. The border patrol agent further testified that, based on his experience, “he knew that approximately 30 persons could be hidden under the cover.” Id. at 607. Again, unlike in this case, the driving behavior was objectively erratic: the truck was observed “weaving back and forth across the [lane] line.” Id. at 605. In contrast to the vague testimony in this case of “sagging,” the Government developed record evidence of particular articula-ble facts to support their suspicion. The border patrol agent in Morales testified that he ingeniously positioned himself at a particular spot near a bump in. the roadway. Id. at 606-07. The agent testified that he had “encountered ways that [smugglers] have tried to hide [a heavy load]. They put 2X4s in the springs and so on and so forth. But when they do that, the vehicle hits [the bump] solid. It doesn’t bounce.” Id. at 607. The border patrol agent observed this phenomenon and noted that the tires were underinflated, id. at 605, and he articulated these observed facts at the suppression hearing. We credited that the agent had drawn “rational inferences from those facts” — that the truck was heavily loaded — and “was able to form the requisite suspicion” to lawfully stop the car. Id. at 607.
This case is perhaps a closer one than Olivares-Pacheco — due to the agents’ observation that the passengers appeared dirty and the SUV was “sagging in the *346 rear.”[75] But because of the absence of the kind of observed, articulable facts that we credited in Morales and Orozco as supporting the credible inference that a truck was heavily loaded with illegal aliens or contraband, I would conclude that Oli-vares-Pacheco is materially indistinguishable from this case and would reverse.
III. CONCLUSION
For the foregoing reasons, I would hold that the border patrol agents lacked reasonable suspicion to stop Cervantes’s car, and I respectfully dissent.

. The border patrol’s own authorizing statute and regulations provide that 'TOO ... miles from [the] external boundary of the United States” is a "reasonable distance” within which border patrol agents are authorized to conduct roving patrols to prevent illegal entry. 8 U.S.C. § 1357(a)(3) (authorizing border patrol agents to conduct roving patrols within a "reasonable distance” of the border); 8 C.F.R. § 287.1(a)(2) (defining "reasonable distance” to mean 100 miles); see also Brignoni-Ponce, 422 U.S. at 877, 95 S.Ct. 2574.

.The Government also points to inconsistent attire as a factor supporting reasonable suspicion: the driver and front passenger wore short sleeves, whereas the rear passengers wore jackets. But there is no reason to believe that wearing jackets on an October morning near Odessa, Texas is suspicious. According to the Farmer’s Almanac, the low temperature that day was 57 degrees. Common sense dictates that some passengers in the back wearing jackets — as opposed to passengers wearing short sleeves in the front of the vehicle — on a fall morning at 8:30 a.m. near Odessa is consistent with comfort and style preferences, not alien smuggling.

. See infra Part 11(C).

. Ante at 329.

. Indeed, in Texas, remaining in the left lane is often against the law-supporting reasonable suspicion for a traffic stop. E.g., Abney v. State, 394 S.W.3d 542, 548 (Tex.Crim.App.2013).

. In Orozco, we observed that the district judge had noted that a border patrol agent honked at the driver as part of the district court's reasons for denying a motion to suppress evidence discovered as a result of a border-patrol stop. 191 F.3d at 582. We suggested that this factor did not contribute to reasonable suspicion, noting that "some of the factors relied on by the trial judge” were inappropriate. Id. at 582-83. We nonetheless affirmed the denial of the motion to suppress based on the totality of the circumstances and not on one factor alone. Id.

. But see Olivares-Pacheco, 633 F.3d at 401 ("[T]he agents observed that [the truck] was dragging some brush.”). Additionally, a flatbed truck has been recognized in our case law as more consistent with alien and drug smuggling than an SUV with passengers visibly seated in the back. See, e.g., Morales, 191 F.3d at 605.