# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2015

Lyle W. Cayce
Clerk

14-20088

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAVIER MADRIGAL,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CR-734-1

Before DAVIS, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant-Appellant appeals the denial of a motion to suppress evidence by the district court. After denial Defendant-Appellant pled guilty to aiding and abetting possession with intent to distribute 50 grams or more of methamphetamine. In his guilty plea, Defendant-Appellant reserved the right to appeal denial of his motion. We disagree with the district court that reasonable suspicion supported the seizure producing this evidence, and therefore, REVERSE and REMAND.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20088

I.

Around noon on October 31, 2012, Officer Randy Thumann observed Javier Madrigal and his wife following another vehicle too closely on Interstate 10 between San Antonio and Houston. Thumann ran the license plate on Madrigal's older model truck, saw that it was recently registered, and stopped them.

During the stop, Thumann initially requested that Madrigal provide his license and registration. Thumann noted that Madrigal's license was from Mexico and posed several questions. Madrigal explained to Thumann that he came from Reynosa, Mexico and was traveling to Houston, Texas. He planned to look at a truck and return later that day. Thumann asked Madrigal whether he had an address for the truck, and Madrigal responded that he would go see a friend in Houston. Lastly, Thumann questioned Madrigal about why he choose to travel on Interstate 10 rather than Highway 59. Madrigal told Thumann that his Houston friend told him Interstate 10 was shorter. Thumann did not assert that Madrigal acted nervously during their exchange.

Thumann returned to his vehicle after the first series of questions and checked Madrigal's license and registration. His computer check returned eight minutes into the stop and revealed that Madrigal had no outstanding warrants. The check did disclose that Madrigal had two prior arrests: a fourteen-year-old arrest for arson and manufacturing a controlled substance and an arrest for driving under the influence in the prior year.

After finishing the computer check, Thumann began a second round of questions with Madrigal. Thumann asked Madrigal whether he was arrested before and whether drugs were in the vehicle. These inquiries lasted roughly eleven minutes into the stop. Importantly, Thumann never returned Madrigal's license and registration during this exchange.

2

No. 14-20088

Then, upon completing his second round of questions, Thumann requested and Madrigal provided consent to search his vehicle. His search began on the roadside when a dog sniffed the truck but did not alert. Thumann noticed that a fuel tank was disconnected and had tool marks. Using a scope, he determined the liquid had an unusual appearance for diesel.

Madrigal followed Thumann at his request to the police station where the search continued. Initially Thumann found no drugs at the station and allowed Madrigal to leave. However, after Madrigal left, Thumann noticed liquid that spilled onto his pants crystallized. The liquid tested positive for methamphetamine, and Thumann had Madrigal arrested near Houston.

The Government charged Madrigal with possession with intent to distribute methamphetamine. In response Madrigal moved to suppress evidence from the traffic stop arguing Thumann lacked reasonable suspicion and did not receive valid consent. At a hearing on the motion, Thumann testified that his eight years of experience when combined with the above facts created reasonable suspicion. The district court denied the motion to suppress. Madrigal then pled guilty but reserved his right to appeal.

II.

In considering a motion to suppress, we accept the district court findings of fact and review only for clear error; conclusions of law are assessed de novo.[1] These standards are applied by viewing the evidence in a light most favorable to the party prevailing below.[2]

---

[1] *Id.*
[2] *Id.*

3

No. 14-20088

III.

The Fourth Amendment forbids an unreasonable search or seizure.[3] A seizure occurs when an officer stops and detains the occupants of a vehicle.[4] If a vehicular stop satisfies the *Terry* test, it is reasonable.[5] Under *Terry*, a decision to stop the vehicle must be justified at its inception.[6] An officer's later actions must also reasonably relate to the facts that prompted the stop. [7]

Actions that exceed the time needed to investigate the initial cause for the stop are not reasonably related.[8] This court recognizes several steps an officer may take to investigate the initial cause of a stop, including: a request to examine a license and registration, a computer check of any license and registration, and questions concerning the purpose and itinerary of a trip.[9]

An investigation into the initial cause of a stop finishes ordinarily when "computer checks come back clean."[10] Once an investigation into the cause of a stop finishes, reasonable suspicion disappears—unless reasonable suspicion of another crime arose.[11] An officer may rely on experience to develop reasonable suspicion, but a "mere hunch" is not enough.[12] Reasonable suspicion requires "specific and articulable facts which, taken together with rational inferences

---

[3] U.S. Const. Amend. IV.

[4] *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993).

[5] *See United States v. Sharpe*, 470 U.S. 675, 682 (1985)(citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

[6] *United States v. Ortiz*, 781 F.3d 221, 227 (5th Cir. 2015). Here, Madrigal does not dispute that the initial stop was justified.

[7] *Id.*

[8] *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).

[9] *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004).

[10] *Id.*

[11] *United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006); *Pack*, 612 F.3d at 350.

[12] *See United States v. Arvizu*, 534 U.S. 266, 273-74 (2002).

4

No. 14-20088

from those facts, warrant intrusion."[13] No single fact is dispositive; instead, individual factors are weighed and assessed together in their totality.[14]

In this case, Madrigal does not dispute that his stop was justified at its inception.[15] The issue is whether Thumann had reasonable suspicion to continue the detention of Madrigal after the initial investigation ended.[16] Thumann relies on several facts to support reasonable suspicion. These factors are roughly categorized into: (1) travel itinerary, (2) vehicle description, and (3) criminal history.

Thumann argues that Madrigal's travel plans added to reasonable suspicion.[17] An itinerary may be suspicious in numerous ways, such as travel at an unusual time.[18] Also, suspicion arises from using a drug corridor or avoiding checkpoints unless it creates a "damned if you do, damned if you don't" situation.[19]

Madrigal created little if any suspicion in his choice to travel from Reynosa to Houston and back in a day. While unusual plans are suspicious, Madrigal's plan was not unusual. Many persons of little-means are forced to travel great distances and avoid the cost of overnight stays. While arduous, it is not unusual for a person to make this sacrifice out of necessity. Madrigal, although having to drive long hours, is not out-of-the-ordinary in his decision to travel from Mexico to Houston and back in a day.[20]

---

[13] *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

[14] *See United States v. Rangel-Portillo*, 586 F.3d 376, 381-82 (5th Cir. 2009) (assigning little weight to various factors that do not create reasonable suspicion in their totality).

[15] *See Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015).

[16] *Id.*

[17] (1) Madrigal traveled from a drug source to a drug distribution place; (2) Madrigal traveled on a drug route; (3) Madrigal planned to return to Mexico on the same day despite a late arrival in Houston; (4) Madrigal had no address for his destination in Houston.

[18] *United States v. Villalobos*, 161 F.3d 285, 289 (5th Cir. 1998).

[19] *See Massi*, 761 F.3d at 522; *United States v. Inocencio*, 40 F.3d 716, 723 (5th Cir. 2000); *United States v. Jones*, 149 F.3d 364, 369 n.3 (5th Cir. 1998).

[20] Round-trip travel from Reynosa to Houston is roughly twelve hours.

No. 14-20088

Madrigal's use of Interstate 10 similarly gives rise to little suspicion. Interstate 10 like all highways between Mexico and Houston may be used as a drug corridor, but it also is a major thoroughfare for legitimate purposes. The vast majority of traffic on Interstate 10 are law-abiding citizens who are traveling to work, home, or for other legitimate purposes.[21]

Madrigal's choice to avoid Highway 59 also is not inherently suspicious. The government argues that many drug couriers avoid Highway 59 because it has numerous police checkpoints. Of course this cuts both ways: a driver on a legitimate trip to Houston may also avoid Highway 59 because of the inconvenience and delay of the checkpoints.

Finally, if Madrigal chose to travel on Highway 59—it would arguably be just as suspicious as Interstate 10, and the mileage is not dramatically different.[22] If Madrigal used Highway 59, he would be on a direct drug corridor. Thus a courier is suspected of drug activity whether on Interstate 10 or Highway 59, and accordingly, is "damned if he did, and damned if he didn't."

Thumann also relied on the fact that Madrigal drove an older and recently registered truck in creating suspicion because many drug couriers use such vehicles. Although a vehicle feature may create suspicion, it is slight unless the characteristic is "so unique in the area as to inherently raise suspicions."[23] Driving an older-recently registered vehicle may be slightly suspicious, but it is minimal. [24] Thousands of such vehicles are purchased and registered annually. In *United States v. Olivares-Pacheco*, police stopped a

---

[21] The source and destination of Madrigal's travel are not suspicious for similar reasons. Because Mexico and Houston are each home to millions of lawful people, neither can support a great inference of criminal activity.

[22] The difference in mileage for a trip via Interstate 10 rather than Highway 59 is roughly forty miles.

[23] *United States v. Barcenas-Rodriguez*, 2000 U.S. App. LEXIS 38828, at *10 (5th Cir. 2000).

[24] *See United States v. Chavez-Chavez*, 205 F.3d 145, 148 (5th Cir. 2000).

No. 14-20088

vehicle registered in Dallas as it traveled on Interstate 20.[25] This Court stated that this registration "adds no suspicion whatsoever" because "it is statistically far more likely that an innocent person" living in Dallas would use Interstate 20 to reach Dallas.[26]

Therefore, Madrigal's vehicle and registration added little to reasonable suspicion. An older vehicle is "not so unique" to create suspicion, because they are a mode of transport for millions of low-income Americans.

Thumann's knowledge of Madrigal's prior arrests is the primary source of suspicion. Awareness of a prior arrest makes suspicion more reasonable but is not enough alone to create reasonable suspicion. [27] His arrest was fourteen-years-old and bears only lightly on whether current criminal activity is afoot. Thus, his arrest is suspicious but is not enough alone to generate reasonable suspicion.

While a close call, we conclude that Thumann lacked enough facts to give rise to reasonable suspicion. Except for the fourteen-year-old drug arrest, facts Thumann relied on added little or no weight to suspicion: Madrigal appeared to be a citizen of smaller means using a common older vehicle on a major interstate. The drug arrest when added to the other grounds urged by the government are not enough to push suspicion across the line into "reasonable suspicion." Therefore, we conclude that Thumann violated Madrigal's Fourth Amendment right through continued detention without reasonable suspicion.

IV.

The next issue is whether consent cleansed the constitutional violation. To do so, the consent must be both voluntary and an independent act of free

---

[25] 633 F.3d at 404.

[26] *Id.*

[27] *See United States v. Reyes Gonzalez*, 328 F.3d 755, 758-59 (5th Cir. 2003); *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000), *abrogated in part by Pack*, 612 F.3d at 358.

will.[28] The government bears the burden to establish consent was voluntary and an independent act of free will.[29]

We consider six factors to evaluate whether consent is voluntary, and none are dispositive.[30] The factors include: (1) voluntariness of a defendant's custodial status, (2) the coerciveness of police procedures, (3) defendant's awareness of his right to refuse consent, (4) the extent and level of defendant's cooperation with police, (5) education and intelligence of the defendant, and (6) defendant's belief that police will find no incriminating evidence.[31]

Three factors determine whether consent is an independent act of free will and none are dispositive.[32] Factors are the: (1) temporal proximity of the illegal conduct and consent, (2) presence of intervening circumstances, and (3) purpose and flagrancy of initial misconduct.[33]

In this case, the district court found it unnecessary to address the issue of consent after finding that Thumann had reasonable suspicion to search. A lack of factual findings precludes this court from determining whether the government satisfied its burden to demonstrate that Madrigal's consent to search was voluntary and given with free will.[34] We must therefore remand this case for the district court to determine whether Madrigal's consent cleansed the constitutional violation.

---

[28] *United States v. Jones*, 234 F.3d 234, 243 (5th Cir. 2000).

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] The district court did adduce one piece of probative evidence—Thumann retained Madrigal's license while requesting consent. This evidence bears on the "temporal proximity" factor of independent act analysis. *See, e.g.*, *Jones*, 234 F.3d at 243. However no single factor in a test is dispositive. *Id.*

No. 14-20088

V.

For the foregoing reasons, the decision of the district court is REVERSED. The case is REMANDED for further proceedings consistent with this opinion.