# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40887

United States Court of Appeals
Fifth Circuit

**FILED**

October 14, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

        Plaintiff–Appellee,

versus

JUAN JOSE RAMIREZ,

        Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SMITH, and COSTA, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Juan Ramirez entered a conditional guilty plea to one count of transporting an illegal alien. He appeals the conviction based on his challenge to the denial of his motion to suppress evidence obtained during a traffic stop, contending that the Border Patrol agent who stopped his truck did so without reasonable suspicion. Finding no error, we affirm.

No. 15-40887

I.

About 9:30 p.m. on a Wednesday, Border Patrol Agent Ricardo Espinel was sitting in his patrol car in the median of U.S. Highway 77 approximately forty-five miles north of the Mexican border, several miles south of the Sarita immigration checkpoint, facing the northbound lanes, which were illuminated by his headlights.  It was nothing out of the ordinary for Espinel:  He had been an agent for six years and had been patrolling this stretch of Highway 77 near Raymondville, Texas, for more than nine months.  The highway, which connects the border area to Corpus Christi and Houston, is a known alien smuggling route.  Espinel had made over 150 alien arrests on this stretch, and he knew that Tuesday, Wednesday, and Thursday nights saw the most smuggling activity, with human smugglers dropping off aliens south of the Sarita checkpoint, typically using SUVs or pickups because they can hold a large number of persons.

Espinel saw Ramirez drive by in a Ford F-150 pickup, a vehicle popular among smugglers. Espinel noticed that Ramirez "kind of like ducked down, kind of hiding behind his hand" as he passed. Espinel saw three or four passengers in the back of the truck, who also "kind of like ducked down or kind of like laid down" when they saw him.  Espinel pursued Ramirez.  As he approached from behind, he "saw heads in the back like popping up and down" and observed Ramirez "swerve to the right and then kind of correct."  Espinel turned on his emergency lights and pulled Ramirez over.  As he was stopping, Espinel saw two passengers get out of the truck and run away; he secured Ramirez and the four remaining passengers—at least two of whom turned out to be illegal aliens.

2

No. 15-40887

II.

When evaluating the denial of a motion to suppress, we review questions of law *de novo*. *United States v. Cervantes*, 797 F.3d 326, 328 (5th Cir. 2015). "Whether an officer had reasonable suspicion to support a stop is treated as a question of law." *United States v. Castillo*, 804 F.3d 361, 364 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1481 (2016). "The evidence and inferences therefrom are reviewed in the light most favorable to the Government as the prevailing party." *United States v. McKinnon*, 681 F.3d 203, 206 (5th Cir. 2012).

A roving Border Patrol agent may stop a vehicle, but only if he or she is "aware of specific, articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle is involved in illegal activities." *United States v. Brignoni-Ponce*, 422 U.S. 873, 873 (1975). "In determining whether reasonable suspicion exists in the context of roving Border Patrol stops, we examine the totality of the circumstances and weigh the [*Brignoni-Ponce*] factors." *United States v. Carranza*, No. 15-51149, --- F. App'x ---, 2016 U.S. App. LEXIS 16298, at *2 (5th Cir. Sept. 2, 2016) (per curiam). In *Brignoni-Ponce*, 422 U.S. at 884–85, the Court outlined a non-exhaustive list of factors that "may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area":

> (1) the characteristics of the area in which the vehicle is encountered; (2) the arresting agent's previous experience with criminal activity; (3) the area's proximity to the border, (4) the usual traffic patterns on the road; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) the appearance of the vehicle; (7) the driver's behavior; and, (8) the passengers' number, appearance, and behavior.

*United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013). Although proximity to the border and an agent's experience are afforded significant weight,[1] "[o]ur

---

[1] *See United States v. Zapata-Ibarra*, 212 F.3d 877, 881 (5th Cir. 2000) (quoting *United*

3

No. 15-40887

analysis is not limited to any one factor." *Zapata-Ibarra*, 212 F.3d at 881.

Espinel had reasonable suspicion to stop Ramirez's truck. Espinel was an experienced agent who had been patrolling Highway 77 near Raymondville for the better part of a year. He first spotted Ramirez's truck about forty-five miles north of the border, well south of the Sarita checkpoint. Generally, a vehicle that is first observed within fifty miles of the Mexican border is considered to be in proximity to it. *United States v. Jacquinot*, 258 F.3d 423, 428 (5th Cir. 2001).[2] Espinel saw Ramirez and his passengers behaving unusually, suggesting they might be nervous. Such behavior is highly relevant.[3] Moreover, Espinel saw Ramirez driving a type of vehicle that is known to be popular

---

*States v. Orozco*, 191 F.3d 578, 581 (5th Cir. 1999)) ("[P]roximity to the border, is a 'paramount factor' in determining reasonable suspicion."); *United States v. Orona-Sanchez*, 648 F.2d 1039, 1042 (5th Cir. Unit A June 1981) ("substantial weight" given to agent's experience).

[2] Ramirez points out that his truck did not cross the border (his trip originated in South Texas), and he maintains that because the truck was registered to San Benito, Texas, it would have been reasonable for Espinel (who checked the vehicle's registration before stopping it) to assume that Ramirez had come from San Benito, just north of the border. But it is not necessary for agents to think that a suspected vehicle has ever crossed the border. As Espinel testified, it is common practice for alien smugglers not to cross the border themselves; the aliens cross by foot and then are picked up by smugglers somewhere north of the border and—as it relates specifically to the facts of this case—south of the Sarita checkpoint. A vehicle's proximity to the border suggests only that it is coming from the border area, where many smuggling trips originate. "Although the agents did not believe that [the defendant's travel] originated at the border, [he] was within three miles of the border and was driving in an area and on a route known for smuggling activities." *Carranza*, 2016 U.S. App. LEXIS 16298, at *2.

[3] *See, e.g.*, *United States v. Soto*, 649 F.3d 406, 412 (5th Cir. 2011) (finding a passenger's attempts to conceal himself from a Border Patrol agent to be relevant to the reasonable-suspicion analysis); *United States v. Rodriguez*, 564 F.3d 735, 744 (5th Cir. 2009) (finding a driver's swerving and repeated glances in his rearview mirror to be relevant); *United States v. Guerrero-Barajas*, 240 F.3d 428, 433 (5th Cir. 2001) (finding swerving relevant); *United States v. Garcia*, 732 F.2d 1221, 1225 (5th Cir. 1984) (finding "evasive action of passengers" to be a "significant factor").

4

No. 15-40887

among smugglers[4] and on a highway[5] and at a time[6] that is similarly known to be popular among them.

Each of these facts adds to the reasonableness of Espinel's decision to stop Ramirez. Taken together, they are sufficient to establish reasonable suspicion. We do not speculate on the proper result had not all of these facts been present.

To support his claim that Espinel lacked reasonable suspicion, Ramirez cites *Orona-Sanchez*, which concerned two Border Patrol agents who had flashed their headlights at a pickup truck that was driving along a road known to be a popular alien-smuggling route. The driver and his passengers appeared startled by the light, and after the agents began following the truck, the defendant's driving became erratic. We held that the agents lacked reasonable suspicion to stop the vehicle. But the agents were inexperienced, a point that we emphasized twice. *Orona-Sanchez*, 648 F.2d at 1042 & n.2. The panel's closing comment suggests that it found that inexperience to be dispositive: "[W]e give substantial weight to the fact that these agents were new to the area and were not familiar with the residents, their vehicles or traffic patterns." *Id.* at 1042. In *Carranza*, 2016 U.S. App. LEXIS 16298, at *3, we relied on the

---

[4] The caselaw is somewhat inconsistent regarding how much weight to give to the fact that Ramirez was driving a Ford F-150 pickup truck, a type of vehicle associated with alien-smuggling in South Texas. In *Jacquinot*, 258 F.3d at 430, we found it relevant that the defendant was driving a work truck, a type of vehicle that tourists rarely drive. But in *Orona-Sanchez*, 648 F.2d at 1042, we found it not relevant that the defendant was driving a ¾-ton pickup, a vehicle that is popular among smugglers but also quite common where the stop occurred. In *Carranza*, 2016 U.S. App. LEXIS 16298, at *3–4, we noted that the stopped vehicle "was atypical of the heavy duty oil field vehicles that ordinarily comprised the traffic in the area at the time [the defendant] was traveling."

[5] *See, e.g.*, *United States v. Aldaco*, 168 F.3d 148, 151-52 (5th Cir. 1999) ("[A] road's reputation as a smuggling route *adds* to the reasonableness of the agents' suspicion.").

[6] *See United States v. Chavez-Chavez*, 205 F.3d 145, 149 (5th Cir. 2000) (opining that the time of the stop contributed to a finding of reasonable suspicion).

fact that the agents were supervisors "and collectively had 24 years of experience working at the Texas-Mexico border and 27 years of experience overall."

Likewise, Espinel was intimately familiar with the stretch of highway where he stopped Ramirez. "[F]actors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers." *Zapata-Ibarra*, 212 F.3d at 881 (quoting *United States v. Holloway*, 962 F.2d 451, 459 (5th Cir. 1992)). Experience is not dispositive, of course. Neither is proximity.

In *United States v. Rangel-Portillo*, 586 F.3d 376 (5th Cir. 2009), we held that an experienced Border Patrol agent lacked reasonable suspicion when he stopped a vehicle 500 yards from the Mexican border. But the agent had little to go on besides his own intuition and the fact that the vehicle was traveling near the border in an area known for alien smuggling. The agent observed that the passengers were wearing shoulder seatbelts, appeared to be silent, did not have shopping bags even though they were exiting a Wal-Mart parking lot, and never made eye contact with the agent. Meanwhile, the driver "looked at [the agent] too much." *Id.* at 376–81. The agent thought those facts were enough for a stop. We disagreed, noting that law-abiding citizens are just as likely as law-breakers, if not more so, to wear seatbelts, refrain from talking, and exit a Wal-Mart parking lot without shopping bags. *Id.* at 381.

By contrast, in the current case, a number of relevant factors besides proximity and the agent's experience are sufficiently present to confer reasonable suspicion. The judgment of conviction is AFFIRMED.