# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40122

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

   Plaintiff - Appellee

v.

HECTOR FERNANDO RUIZ GARCIA,

   Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:16-CR-90-2

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

  Hector Fernando Ruiz Garcia pleaded guilty to conspiracy to possess marijuana with intent to distribute. Pursuant to his plea agreement, Ruiz Garcia appeals the denial of his motion to suppress evidence from the traffic stop that gave rise to the charges against him. The district court denied the motion after determining that border patrol agents had reasonable suspicion to perform the investigatory stop. We AFFIRM.

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40122

BACKGROUND

The relevant facts are not in dispute. Around 7:00 p.m. on January 7, 2016, Daniel Crum and Javier Guevara, two United States Customs and Border Protection ("CBP") Special Agents, were monitoring traffic on Mines Road near the United States-Mexico border. Mines Road runs parallel to the Rio Grande and is about one and a half miles away from the river. The road intersects State Highway 255, which leads to a port of entry from Mexico to the United States. This part of Mines Road is a notorious smuggling route. Smugglers bring narcotics across the river on rafts. Drivers can then pick up the contraband and remove it to Laredo. Both agents had substantial experience in this area; Crum had eight years of experience, and Guevara had almost ten. In the past year, Crum had been involved in approximately five narcotics seizures in this area, and Guevara had apprehended multiple groups of illegal aliens and multiple large loads of drugs. In recent weeks, they had apprehended thirteen illegal aliens and more than 800 pounds of marijuana.

On the evening of the traffic stop, Guevara saw a Chrysler sedan with paper license tags driving along Mines Road towards State Highway 255. Paper license tags are often used by drug-traffickers. A Ford Expedition was following the sedan at a close distance. Guevara radioed Crum that there were two vehicles driving in tandem with single drivers. This description drew Crum's attention because smugglers often have a smaller "scout" vehicle drive in front of a larger "load" vehicle to watch for law enforcement. The vehicles turned off Mines Road onto State Highway 255, drove toward the port of entry, and dropped out of the agents' view. Within a minute, the vehicles reappeared, travelling back towards Laredo in the same tandem formation. There was only one turnaround on State Highway 255 that the vehicles could have used within that time frame, and CBP had recently seized 10 or 12 bundles of marijuana

there. Crum testified that at this point he suspected the vehicles were engaged in criminal activity.

After the vehicles reappeared, Crum and Guevara began to follow them and ran license checks on them. Guevara then pulled over the Chrysler, and Crum pulled over the Excursion. Ruiz Garcia exited the Excursion and asked what he had done wrong. He then fled on foot before being apprehended by another officer. CBP officers searched the Excursion and discovered over 700 pounds of marijuana.

When Ruiz Garcia moved to suppress the evidence from the traffic stop, a magistrate judge held an evidentiary hearing and recommended denial of the motion. The district court adopted the magistrate judge's report and recommendation and denied the motion to suppress.

## STANDARD OF REVIEW

In reviewing a district court's denial of a motion to suppress, we review legal issues, including whether there was reasonable suspicion, de novo. *United States v. Cervantes*, 797 F.3d 326, 328 (5th Cir. 2015). The district court's factual findings are reviewed for clear error. *Id.* And we view the evidence presented at the suppression hearing in the light most favorable to the prevailing party, here, the Government. *Id.*

## DISCUSSION

CBP agents on roving patrol "may detain vehicles for investigation if they are aware of specific, articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle is involved in illegal activities." *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013). In determining whether CBP had reasonable suspicion to stop a vehicle, this court examines the totality of the circumstances, weighing factors including (1) proximity to the border; (2) the characteristics of the area; (3) the road's usual traffic patterns; (4) the agents' experience in detecting illegal activities;

No. 17-40122

(5) the driver's behavior; (6) the vehicle's appearance; and (7) recent trafficking of drugs or illegal aliens in the area. *Cervantes*, 797 F.3d at 329 (citing factors from *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85, 95 S. Ct. 2574, 2582 (1975)). Viewing the facts in the light most favorable to the Government, we conclude that the CBP agents had reasonable suspicion.

All of the factors listed above support a finding of reasonable suspicion: (1) the CBP agents encountered the vehicles less than one and a half miles from the border;[1] (2) this portion of Mines Road is a notorious smuggling route; (3) the two vehicles drove in tandem, using a "scout" car and "load" car formation; (4) both agents had substantial experience dealing with narcotics and alien smuggling in this area; (5) the vehicles made an abrupt, simultaneous U-turn and headed back toward Laredo; (6) the Chrysler had paper license tags; and (7) in the weeks before the stop, there had been multiple seizures of contraband along that stretch of Mines Road, including the seizure of 10 or 12 bundles of marijuana at the turnaround on State Highway 255 closest to Mines Road—the same turnaround used by the two vehicles.

Ruiz Garcia argues that, taken in isolation, no individual factor is sufficient to indicate illegal activity. But this "divide-and-conquer" approach does not defeat the ultimate, totality-of-the-circumstances conclusion that the agents' suspicion was reasonable. *See United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 751 (2002); *United States v. Neufeld-Neufeld*, 338 F.3d 374,

---

[1] A vehicle within fifty miles of the Mexican border is considered to be in proximity to it. *United States v. Jacquinot*, 258 F.3d 423, 428 (5th Cir. 2001). It is true, as Ruiz Garcia observes, that the CBP agents did not think that the vehicles' journey originated across the border. But the CBP agents did suspect that the vehicles had picked up narcotics or aliens whose journey had originated across the border. *See, e.g.*, *United States v. Ramirez*, 839 F.3d 437, 441 n.2 (5th Cir. 2016) (noting that "it is not necessary for agents to think that a suspected vehicle has ever crossed the border").

379 (5th Cir. 2003) ("The *Brignoni–Ponce* factors must not be analyzed in isolation from each other, but rather as a collective whole.").

Ruiz Garcia also challenges the district court's determination by pointing out that this case does not involve other factors that could arouse reasonable suspicion, such as the number or appearance of the people inside the vehicles. *See Cervantes*, 797 F.3d at 329 (listing the number and appearance of passengers as a possibly significant factor). But "not every factor must weigh in favor of reasonable suspicion for it to be present." *Id.* And the conclusion that reasonable suspicion exists "need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277, 122 S. Ct. at 753.

In sum, the totality of the circumstances indicates that reasonable suspicion existed to justify the investigatory stop of Ruiz Garcia's vehicle. For these reasons, the district court's judgment is **AFFIRMED**.