# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 21, 2013

No. 12-40530

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOSE ELEAZAR GARZA,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before ELROD and HIGGINSON, Circuit Judges, and JACKSON, District Judge.[*]

JACKSON, District Judge:

Jose Eleazar Garza ("Garza") appeals the district court's denial of his motion to suppress evidence seized as the result of a traffic stop. Garza argues that, under the totality of the circumstances, the arresting officer did not have reasonable suspicion to make the stop. For the reasons that follow, we AFFIRM the district court's ruling.

---

[*] Chief Judge of the Middle District of Louisiana, sitting by designation.

No. 12-40530

I.

In February 2012, Onesimo Guerrero was a United States Border Patrol ("USBP") Agent assigned to roving patrol duties in the city of Roma, Texas. Only the Rio Grande river separates Roma from Mexico, and just to the west of Roma is the smaller border community of Fronton, Texas. As of February 2012, approximately 200 people lived in Fronton. Only one road, FM 650, leads in and out of Fronton. Residents of Fronton routinely report alien and narcotics smuggling to law enforcement, and Border Patrol Agents, including Guerrero, have made numerous arrests for the smuggling of aliens and narcotics in the area.[1]

On the morning of February 4, Guerrero, while on a roving patrol in Roma, overheard a radio broadcast to be on the lookout ("BOLO") for a suspicious looking older model pickup truck carrying plywood in the bed, parked at a gas station at the corner of FM 650 and Highway 83 near Fronton.[2] Guerrero knew from his three years of experience as a Border Patrol Agent that smugglers often used plywood to conceal illegal cargo in the back of pickup trucks. As he drove toward the gas station, Guerrero learned that the BOLO report came from an Immigration and Customs Enforcement ("ICE") Agent, Eric Thelander, who had received the information from a confidential informant ("CI").

According to the testimony, the gas station is approximately five miles north of Fronton, and connected to the city only by FM 650. The convenience store within the gas station is the only store in the Fronton area, and the only store on the way from Fronton to Roma. Guerrero testified that he observed

---

[1] FM 650 is particularly known for smuggling because of its close proximity to the Rio Grande, and because it is the only route to the interior of the United States from Fronton.

[2] The district court found that, as a result of the BOLO report, Guerrero also believed the truck was "possibly loaded with narcotics." For reasons discussed later in this opinion, we find the court's factual determination unsupported by the record.

2

no traffic as he traveled south on FM 650 from Roma to the gas station, and, upon arriving at the station, observed two pickup trucks in the parking lot. The trucks were the only two vehicles at the gas station. One of the two pickups met the BOLO description, while the other did not. Guerrero was familiar with the local residents in the area, as well as the vehicles they drove, from his experience patrolling FM 650. He recognized one of the trucks, but had never seen the pickup truck that matched the BOLO description until he observed it upon arriving at the gas station.

Guerrero drove into the parking lot of the gas station and parked behind the suspicious truck. Appellant Jose Eleazar Garza ("Garza"), the driver of the truck, was pumping gas. A female passenger sat in the front seat. The female passenger stared straight ahead and did not turn, even as Guerrero drove past the truck in his marked patrol unit, which Guerrero found unusual. As he passed the truck, Guerrero observed, in addition to the plywood, a door and another piece of wood protruding from the back of the truck bed. Guerrero called the USBP to obtain a more detailed description of the pickup.

Guerrero then ended his call with dispatch and intended to get out of his vehicle and talk with Garza. However, as soon as Garza saw Guerrero, he began acting nervously, moving fast to replace the gas cap, tensing up and shaking while doing so, and then quickly entering into his truck. As Garza attempted to drive away, Guerrero activated the service lights of his patrol car, stopped the truck, and engaged Garza in conversation. Guerrero asked Garza where he was coming from and going to, and he requested Garza's permission to search the back of the truck. Garza consented to the search, and Guerrero lifted the plywood in the back of the truck, revealing several people who admitted they were unlawfully in the United States. Guerrero then arrested Garza.

No. 12-40530

Thelander, a five-year veteran ICE agent assigned to the area, testified about his relationship with the CI and the nature of the tip. Poor cell reception in the area where the CI was located prevented him from directly contacting Thelander that day, so he had a family member contact Thelander. Similar circumstances had forced the CI's family members to contact Thelander in the past. As of February 2012, Thelander had been working with the CI for approximately five years. The information previously provided by the CI had led to 13 or 14 successful seizures by Thelander, and the CI and his family had provided several more tips to ICE agents in the previous five years. According to Thelander, the CI's tips were usually "on the money" and verifiable, and when they were not, the problem was due to a delay in law enforcement officers acting on the tip, and not due to the accuracy of the tip.

The CI's family member advised Thelander that an older model pickup truck traveled up the road with a sheet of plywood in the back. The truck was unfamiliar to the CI, and was not believed to have been owned and/or operated by a resident of Fronton. According to the tip, the truck was parked at the gas station on the corner FM 650 and Highway 83. No other details were provided to Thelander at that time. Thelander immediately relayed the information to the Border Patrol, which then put out the BOLO which Guerrero received. According to the CI's family member, the CI first encountered the pickup while it was traveling at a high rate of speed on FM 650 two miles west of the gas station, and five miles north of the Rio Grande.

Garza was arrested by Guerrero on February 4, 2012. On February 21, 2012, Garza was charged with one count of conspiring to transport aliens illegally present within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), (ii), and (B)(I), and two counts of alien transportation, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(II), and (B)(i). On March 7, 2012, Garza filed a motion to suppress all evidence gathered as a result of the

No. 12-40530

traffic stop and search by Border Patrol agents. After holding an evidentiary hearing and oral argument the district court denied the motion in an oral ruling from the bench.

On March 21, 2012, Garza entered a conditional guilty plea to one count of transporting aliens within the United States for private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(II), and (B)(i). Garza's guilty plea reserved to him the right to appeal the district court's denial of his motion to suppress. The government dismissed the remaining counts. On May 14, 2012, Garza was sentenced to 15 months imprisonment in the custody of the Federal Bureau of Prisons, a two-year term period of supervised release, and a special assessment of $100. Garza now appeals the district court's denial of his motion to suppress.

## II.

In reviewing a district court's denial of a motion to suppress, we review factual findings for clear error, and legal conclusions *de novo. United States v. Rangel-Portillo*, 586 F.3d 376, 379 (5th Cir. 2009). The district court's finding that Agent Guerrero had reasonable suspicion to stop Garza is a conclusion of law which we review *de novo. United States v. Rodriguez*, 564 F.3d 735, 740 (5th Cir. 2009).

A temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes and must be justified by reasonable suspicion that criminal activity has taken or is currently taking place; otherwise, evidence obtained through such a detention may be excluded. *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968). "To temporarily detain a vehicle for investigatory purposes, a Border Patrol Agent on roving patrol must be aware of 'specific articulable facts' together with [a] rational inference from those facts, that warrant a reasonable suspicion that the vehicle is involved in illegal activities, such as transporting undocumented immigrants." *United*

No. 12-40530

*States v. Chavez-Chavez*, 205 F.3d 145, 147 (5th Cir. 2000). Reasonable suspicion "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999).

## A. The *Brignoni-Ponce* Factors

Border Patrol officers on roving patrol may detain vehicles for investigation only if they are "aware of specific, articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle is involved in illegal activities." *United States v. Cardona*, 955 F.2d 976, 980 (5th Cir. 1992) (citation and internal quotation marks omitted). In *Brignoni-Ponce*, the Supreme Court laid out a multi-factored analysis in deciding "whether there is reasonable suspicion to stop a car in the border area." 422 U.S. 873, 885 (1975). Factors that may be considered include: (1) the characteristics of the area in which the vehicle is encountered; (2) the arresting agent's previous experience with criminal activity; (3) the area's proximity to the border, (4) the usual traffic patterns on the road; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) the appearance of the vehicle; (7) the driver's behavior; and, (8) the passengers' number, appearance, and behavior. *Id.* at 884–85. "Not every *Brignoni-Ponce* factor need weigh in favor of reasonable suspicion for it to be present, nor does the Fourth Amendment require the law enforcement officer eliminate all reasonable possibility of innocent travel before conducting an investigatory stop." *United States v. Zapata-Ibarra*, 212 F.3d 877, 884 (5th Cir. 2000). The totality of the circumstances is taken into consideration when deciding whether Guerrero had reasonable suspicion to stop Garza's pickup truck. *United States v. Hernandez*, 477 F.3d 210, 213 (5th Cir. 2007).

The government argues, and we agree, that several of the factors listed above support a finding that Agent Guerrero had reasonable suspicion to justify his stop of Garza's pickup truck.

The first factor we consider is the characteristics of the area in which Guerrero encountered Garza's truck. We have previously held that travel along a route filled with border traffic weighs in favor of reasonable suspicion. *United States v. Villalobos*, 161 F.3d 285, 289 (5th Cir. 1998). Garza's truck was traveling east along FM 650 toward Roma, Texas from Fronton, and was stopped at the intersection of FM 650 and Highway 83. FM 650 is a well-known smuggling road for narcotics and aliens because it is the only route in and out of Fronton. We have recognized that Highway 83 in this particular area "is known to be a route frequented by alien and narcotics traffickers." *United States v. Arjona-Martinez*, 66 F. App'x. 525 (5th Cir. 2003) (per curiam) (unpublished). Cars traveling from the border are required to travel along this route to access the interior of the United States. In addition, Fronton is sparsely populated, and unusual road activity is more easily noticed. The area's reputation as a smuggling route supports Guerrero's reasonable suspicion.

"[A]n officer's experience is a contributing factor in determining whether reasonable suspicion exists." *Zapata-Ibarra*, 212 F.3d at 882 (quoting *United States v. Aldaco*, 168 F.3d 148, 151 (5th Cir. 1999)). Guerrero underwent three months of training at the Border Patrol Academy. *See United States v. Soto*, 649 F.3d 406, 411 n.6 (5th Cir. 2011) (noting that both agents involved in the stop had completed a Border Patrol training program). As a Border Patrol Agent, he has patrolled the border area on a regular basis for more than two and a half year. *See United States v. Jacquinot*, 258 F.3d 423, 429 (5th Cir. 2001) (finding pertinent a Border Patrol agent's three years of experience). Guerrero has investigated tips and made arrests in that same

area for narcotics and alien smuggling. His training and experience inform our assessment of the circumstances likely to arouse suspicion in the area. *Brignoni-Ponce*, 422 U.S. at 885.

Proximity to the border is "a 'paramount factor' in determining reasonable suspicion." *Zapata-Ibarra*, 212 F.3d at 881 (citations omitted); *see also United States v. Melendez–Gonzalez*, 727 F.2d 407, 411 (5th Cir. 1984) ("[T]his Court has repeatedly emphasized that one of the vital elements in the *Brignoni–Ponce* reasonable suspicion test is whether the agents had reason to believe that the vehicle in question had recently crossed the border." (citing *United States v. Pena–Cantu*, 639 F.2d 1228, 1229 (5th Cir. 1981); *United States v. Pacheco*, 617 F.2d 84, 86 (5th Cir. 1980); *United States v. Lamas*, 608 F.2d 547, 549 (5th Cir. 1979))). Guerrero discovered the truck at the intersection of FM 650 and Highway 83, just five miles from the border between the United States and Mexico. This Court has previously determined that vehicles traveling more than 50 miles from the border are a "substantial distance" from the border. *United States v. Inocencio*, 40 F.3d 716, 722 n.7 (5th Cir. 1994). Anything less than 50 miles therefore implicates the proximity factor. This factor contributes "significantly" to the reasonableness of Guerrero's suspicions, and weighs heavily in the government's favor in this case. *United States v. Nichols*, 142 F.3d 857, 867 (5th Cir. 1998).

Another factor we consider is Guerrero's experience with vehicular traffic in the area. *See United States v. Aldaco*, 168 F.3d 148, 152 (5th Cir. 1999) (finding relevant the officer's observation that "traffic [wa]s usually scarce on Highway 85 after eight or nine o'clock in the evening"). This Court has previously held that "an officer's experience is a contributing factor in determining whether reasonable suspicion exists." *Id.* at 151. The Court in *Brignoni-Ponce* again recognized the importance of an officer's experience in the field, and the inferences he may reasonably draw from that experience.

422 U.S. at 885 ("In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling."). Guerrero had been on roving patrol in the area for three years at the time he stopped Garza. During such time, Guerrero had learned of FM 650's reputation as a smuggling route. Only 200 people live in the area of Fronton, Texas, and Guerrero knew the local residents and could readily identify their vehicles. *Villalobos,* 161 F.3d at 289 (factoring in that "the agents, who were familiar with the area residents, did not recognize Villalobos's truck as a local vehicle."). Upon arriving at the gas station, Guerrero knew that Garza's truck did not belong to a Fronton resident. Furthermore, Guerrero testified that his experience had taught him that trucks in the area carrying plywood, as Garza's did, increased the likelihood that the driver was concealing some sort of contraband. These facts, viewed in light of Guerrero's experience as a roving patrol agent, reasonably led him to conclude that something illegal may have been afoot. Thus, Guerrero acted on more than a mere hunch.

Unprovoked flight, as well as nervous, erratic behavior, are factors which support a finding of reasonable suspicion, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), especially in a border case, *see Brignoni–Ponce*, 422 U.S. at 885. According to the testimony, upon observing Guerrero at the gas station, Garza's behavior became excited and nervous, and he hurriedly exited the gas station. Guerrero found this behavior unusual, and it contributes to a finding of reasonable suspicion. *See DeLeon-Reyna*, 930 F.2d at 403–04 (finding relevant that "the defendant, Mario De Leon-Reyna, appeared nervous and became rigid when he passed Martinez's marked patrol car.").

The appearance of Garza's truck is the fifth and final factor we consider. The truck contained a sheet of plywood, along with a door and another piece of wood protruding from the back of the truck. The presence of

plywood in the back of a pickup truck may contribute to reasonable suspicion of drug or alien smuggling. 930 F.2d at 401 (noting that "the Border Patrol reference manual warn[s] of smuggling efforts via false compartments in plywood cargo"); *United States v. Varela-Andujo*, 746 F.2d 1046, 1048 (5th Cir. 1984) (noting that a substantial portion of the bed of the pickup truck was covered by "a piece of plywood and then by a tarpaulin"); *see also United States v. Morales*, 191 F.3d 602, 605 (5th Cir. 1999) ("The pickup truck had a fiberglass cover over the truck bed. The Agent knew that smugglers use such cover to hide contraband. For example, based on his experience, persons could have been lying under it."); *United States v. Clarke*, 250 F.3d 739 (5th Cir. 2001) (per curiam) (unpublished) (noting that "[t]he pickup had plywood in its bed, something that Border Patrol agents had observed in smuggling operations"). Guerrero knew that smugglers often used plywood to "load" their trucks with illegal contraband. Indeed, he testified that during his time as a Border Patrol Agent, he had previously encountered vehicles using plywood to conceal cargo. The suspicious presence and placement of the plywood in the bed of Garza's pickup truck, under the circumstances, weighs heavily in our analysis.

The issue is a close one, and our decision rests on the unique blend of facts presented. Under the totality of the circumstances, considered in connection with the *Brignoni-Ponce* factors, we conclude that Guerrero has reasonable suspicion to stop Garza's truck. *See United States v. Rico-Soto*, 690 F.3d 376 (5th Cir. 2012); *Jacquinot*, 258 F.3d at 423; *Chavez-Chavez*, 205 F.3d at 145; *Zapata-Ibarra*, 212 F.3d at 877; *Morales*, 191 F.3d at 602; *Gonzalez*, 190 F.3d at 668; *see also United States v. Medina*, 295 F. App'x 702 (5th Cir. 2008) (per curiam) (unpublished); *United States v. Vega*, 254 F.3d 70 (5th Cir. 2001) (unpublished).

No. 12-40530

## Conclusion

For the reasons stated, the district court's order denying Garza's motion to suppress, and his conviction and sentence, are AFFIRMED.

No. 12-40530

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

In my view, the majority opinion stretches the *Brignoni-Ponce* factors too far. Accordingly, I respectfully dissent.

The majority opinion is the first among many legal analyses in this case to rely on the *Brignoni-Ponce* factors *alone*. Indeed, both the government and the district court relied on the *Brignoni-Ponce* factors *combined with* a confidential informant's ("CI") tip to conclude that Guerrero had reasonable suspicion to stop Garza's truck.[1] The majority opinion wisely avoids the CI tip, as it contained no suggestion that Garza had engaged in illegal activity, nor any prediction of Garza's future behavior.[2] That, however, leaves the majority opinion with nothing but these undisputed facts relevant to the *Brignoni-Ponce* analysis: an experienced officer observing a purportedly unfamiliar truck carrying plywood near the border, whose driver acted

---

[1] The record demonstrates that the district court was unwilling to conclude that Guerrero had reasonable suspicion based only on the facts relevant to the *Brignoni-Ponce* analysis. At the hearing on Garza's motion to suppress, the court explained:

> [Guerrero] pulls up. There's this pickup truck with the plywood in the back at the gas pump and the only articulable facts that the officer could relay that gave him suspicion was, it appeared—[Garza] appeared nervous and quick in removing the gas nozzle and replacing it into the pump and then getting into his vehicle to drive off and that [Garza's] passenger would not look at [him] which he found suspicious. She only looked forward. *I would say that all of that put together doesn't raise any reasonable suspicion . . . .*

(emphasis added). Ultimately, the district court concluded:

> I think it's a close call but I'm going to find that the—*based on the reliability of [the CI] and the specific information given* that [Guerrero] was within his constitutional rights to detain for investigation [Garza] because of the reasonable suspicion that was created.

[2] The district court incorrectly concluded that the CI tip contained some information regarding illegality by Garza. It did not. *Cf. United States v. Roch*, 5 F.3d 894, 898 (5th Cir. 1993) ("While the information received from the informant in this case may have been derived from direct contact with [the defendant], the absence of significant details and a prediction of future behavior prevents us from holding that such information provided a sufficient basis for a reasonable suspicion finding.").

12

No. 12-40530

"nervously" when the officer approached.[3]  In my view, these facts alone are not enough to demonstrate reasonable suspicion.  As we explained in *United States v. Rangel-Portillo*, conduct that law-abiding individuals are just as likely to engage in carries no weight in the reasonable suspicion analysis.  *See* 586 F.3d 376, 381 (5th Cir. 2009).  Under the facts of this case, I am hard pressed to imagine a scenario in which a border patrol agent will not have reasonable suspicion to stop an unfamiliar plywood-carrying truck.  Because the right to be free from unwarranted police intrusion does not completely dissipate near the border, I respectfully dissent.

---

[3] Our precedent is inconsistent regarding the impact of allegedly "nervous" behavior. *See United States v. Zapata-Ibarra*, 223 F.3d 281, 282 (5th Cir. 2000) (Wiener, J., dissenting) (collecting cases and explaining that we often accept contradictory facts as justifying reasonable suspicion, such as "the driver appear[ing] nervous . . . *or* the driver . . . appear[ing] too cool, calm, and collected" (footnote omitted)).

13