# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41014
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 24, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

WAYNE HOWARD MASTERS,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:15-CR-278-1

Before HIGGINBOTHAM, ELROD and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Wayne Howard Masters was charged with conspiracy to possess and possession with intent to distribute 100 kilograms or more of marijuana. Masters moved to suppress evidence obtained from a warrantless stop of his vehicle by a Border Patrol agent. Following a hearing, the district court denied the motion to suppress. Masters waived his right to a jury trial, reserved his right to appeal the denial of his motion to suppress, and proceeded to a bench

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-41014

trial on stipulated facts.  The district court found Masters guilty as charged.
The court sentenced Masters to concurrent 60-month terms of imprisonment
and concurrent 4-year terms of supervised release on each count.  Masters filed
a timely notice of appeal.

Masters argues that the district court erred by denying his motion to
suppress.  He argues that the investigatory stop of his vehicle was not based
on reasonable suspicion as required by the Fourth Amendment.  He also claims
that the Government cannot demonstrate that his consent to the search of his
vehicle was untainted by the unlawful stop.

In reviewing the denial of a motion to suppress evidence, this court
reviews the constitutionality of the stop, including whether there was
reasonable suspicion, *de novo*.  *United States v. Rangel-Portillo*, 586 F.3d 376,
379 (5th Cir. 2009); *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th
Cir. 2003).  Factual findings are reviewed for clear error.  *United States v.
Garcia*, 604 F.3d 186, 190 (5th Cir. 2010).

In determining reasonable suspicion in the context of roving Border
Patrol stops, courts examine the totality of the circumstances, including the
factors enunciated in *Brignoni-Ponce*.  *United States v. Jacquinot*, 258 F.3d
423, 427 (5th Cir. 2001).  These are (1) the area's proximity to the border;
(2) the characteristics of the area; (3) usual traffic patterns; (4) the agent's
experience in detecting illegal activity; (5) the driver's behavior; (6) the aspects
or characteristics of the vehicle; (7) information about recent illegal trafficking
in aliens or narcotics in the area; and (8) the number of passengers and their
appearance and behavior.  *Id.*  The evidence from the suppression hearing
related to each factor is discussed below.[1]

---

[1] Because Masters was the only occupant in the vehicle, the number, appearance, and
behavior of the passengers is not applicable.

No. 15-41014

*Characteristics of the Area*

Border Patrol Agent Mark Anthony Rocha testified that Highway 83 is commonly used by narcotics traffickers and alien smugglers as an egress from the Rio Grande Valley north to Laredo. During his six years as an agent stationed in Zapata, Texas, he had seen numerous seizures of contraband, and he noted that seizures involving bogus oil field trucks, like the one Masters was driving, were increasing. It is well established that a road's reputation as a smuggling route adds to the reasonableness of an agent's suspicion. *See United States v. Cervantes*, 797 F.3d 326, 336 (5th Cir. 2015).

Masters argues that this factor should be given no weight because Agent Rocha also testified that there was legitimate traffic on the road. This court has previously rejected the argument that a road's notoriety as a smuggling route should get no weight because it was also a major highway used by thousands for legitimate travel. *Jacquinot*, 258 F.3d at 428. Instead, a road's reputation for illicit activity remains an additional factor for consideration. *See id.* at 429.

*Agent Rocha's Previous Experience*

Agent Rocha has served as a Border Patrol agent for over seven years, six of which were spent patrolling the Zapata area. Agent Rocha has received specialized training in commercial vehicle and highway interdiction. He has seen and participated in numerous contraband seizures, including interdiction of bogus oil field trucks hiding contraband. Agent Rocha's experience supported the district court's finding of reasonable suspicion. *See United States v. Garza*, 727 F.3d 436, 441 (giving weight to the fact that agent patrolled the area on a regular basis for more than two and one-half years).

*Usual Traffic Patterns & Driver's Behavior*

Agent Rocha testified that legitimate oil field trucks typically travel in tandem, especially when travelling to and from a job site. Masters's truck was not accompanied by other trucks with similar company logos. Masters was also driving between 60 and 65 miles per hour, which was below the posted speed limit of 70 and 75 miles per hour, and much slower than Agent Rocha usually saw oil field trucks drive. This court has previously found that a driver's "unusually slow speed," along with other factors, supported reasonable suspicion in light of the officers' experience and training. *United States v. Garcia*, 732 F.2d 1221, 1225 (5th Cir. 1984).

*Appearance of the Vehicle*

Agent Rocha noted several aspects of Masters's vehicle that raised his suspicion. First, though it had been raining for several days and oil field trucks typically drive on mud and caliche roads, Masters's truck was unusually clean. The cleanliness of a purported work vehicle may support reasonable suspicion in light of current weather and road conditions. *See United States v. Nichols*, 142 F.3d 857, 870 (5th Cir. 1998) (giving weight to unusual cleanliness of purported utility vehicle with no logos when such vehicles were usually dirty).

The truck also had a separated tool box of mismatching color from the auxiliary fuel tank, which had an apparently inoperable fuel pump. Agent Rocha testified that in his experience, the tool box and fuel tank are usually one piece, and he had never seen one with mismatching colors. Furthermore, Agent Rocha has previously found similar auxiliary fuel tanks that were used to hide contraband.

Agent Rocha's suspicion was furthered by the information learned from the registration check. Based on Agent Rocha's experience, legitimate, large-company oil field trucks are registered to the company's corporate

4

headquarters and are obtained from a leasing company. Masters's truck was not registered to Rock Waters's Houston headquarters, and its previous owner was listed as a generic-sounding finance company in a small border town. "A vehicle's registration may, under some circumstances, add to reasonable suspicion." *United States v. Cervantes*, 797 F.3d 326, 337 (5th Cir. 2015) (citation omitted).

*Information About Recent Illegal Activity in the Area*

Agent Rocha did not have any specific information, such as an anonymous tip, about Masters's vehicle, but such information is not required. *See United States v. Chavez-Chavez*, 205 F.3d 145, 149 (5th Cir. 2000) (noting that although agents did not have any specific information connecting defendant's van to criminal activity, agents had pursued illegal aliens in the area on a regular basis). Agent Rocha testified that he has seen numerous seizures of contraband in his patrol area and that, at the time of the stop, seizures involving purported oil field trucks hiding contraband were on the rise.

*Proximity to the Border*

Here, the stop occurred approximately five miles from the border. Masters argues that this factor should be given little weight given Agent Rocha's testimony that he had no idea where Masters's truck had originated. But, as the Government points out, Agent Rocha did not testify that he had *no suspicion* that Masters's truck had ever crossed the border or had come from the border. Indeed, Agent Rocha testified that given the absence of a crossing history for the vehicle, he suspected that Masters had circumvented border checkpoints.

In any event, an agent's reason to believe a vehicle has crossed the border "is not an essential element if other articulable facts 'reasonably warrant

suspicion' that the vehicles are carrying illegal aliens or contraband." *United States v. Rivera*, 595 F.2d 1095, 1098 n.4 (5th Cir. 1979) (citation omitted). As discussed above, Agent Rocha had ample reasonable suspicion based on the other factors.

Masters argues that his consent to search the vehicle does not dissipate the taint of the alleged unlawful stop. However, Masters does not challenge the district court's determination of probable cause after the stop. Therefore, Masters's argument related to consent is not relevant because consent was not required once Agent Rocha had probable cause to search. *See United States v. Banuelos-Romero*, 597 F.3d 763, 767-68 (5th Cir. 2010) (explaining that "if probable cause existed, Appellant's consent was not required for Trooper Dollar to search").

Because Agent Rocha had reasonable suspicion to stop Masters's vehicle, the district court did not err in denying the motion to suppress the evidence obtained from the stop. Accordingly, the district court's decision is AFFIRMED.