JERRY E. SMITH, Circuit Judge, dissenting:
There is no Fourth Amendment violation. Nevertheless, the majority-guided by the erroneous decision of the district court-misapplies Supreme Court and Fifth Circuit precedent in determining that the exclusionary rule applies. The majority's well-intended blunder means that a clear violation of the immigration laws-transportation of an illegal alien-may go unpunished.[1] I respectfully dissent and would reverse the order granting the motion to suppress.
*348 The district court incorrectly weighed the Brignoni-Ponce factors[2] by adopting the analysis provided by Freeman in his objection to the magistrate judge's report and recommendation. That analysis failed to examine correctly the factors based on the totality of the circumstances. Moreover, the court improperly considered Agent Perez's subjective intent when making its determination, in violation of the admonishment in Whren v. United States , 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), that Supreme Court precedent "foreclose[s] any argument that the constitutional reasonableness of [a] traffic stop[ ] depends on the actual motivations of the individual officers involved." Consequently, because the district court operated under an errant view of the law, the majority should have "examine[d] th[e] entire matter de novo ." United States v. Toussaint , 838 F.3d 503, 507 (5th Cir. 2016).
"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."[3] "[T]he 'balance between the public interest and the individual's right to personal security,' tilts in favor of a standard less than probable cause in such cases...." Arvizu , 534 U.S. at 273, 122 S.Ct. 744 (quoting Brignoni-Ponce , 422 U.S. at 878, 95 S.Ct. 2574 ). Consequently, no Fourth Amendment violation occurs where "the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.' " Id. (quoting Terry , 392 U.S. at 30, 88 S.Ct. 1868 ).
Although the "concept of reasonable suspicion is somewhat abstract," id. at 274, 122 S.Ct. 744, reviewing courts making reasonable-suspicion determinations "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Id. at 273, 122 S.Ct. 744 (quoting United States v. Cortez , 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ). This requires that a reviewing court "allow[ ] officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " Id. (quoting Cortez , 449 U.S. at 418, 101 S.Ct. 690 ). "[T]he likelihood of criminal activity" required for reasonable suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Id. at 274, 122 S.Ct. 744. Further, the reasonableness of a traffic stop does not hinge on the subjective motivations of the officers, Whren , 517 U.S. at 813, 116 S.Ct. 1769, so long as "the circumstances, viewed objectively, justify that action." Id. (quoting Scott v. United States , 436 U.S. 128, 136, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) ).
In Brignoni-Ponce , the Court articulated a multifactor test for deciding whether an officer has the reasonable suspicion to warrant stopping a vehicle near the border.[4] We have summarized the factors as follows:
*349 (1) the area's proximity to the border; (2) characteristics of the area; (3) usual traffic patterns; (4) the agents' experience in detecting illegal activity; (5) behavior of the driver; (6) particular aspects or characteristics of the vehicle; (7) information about recent illegal trafficking of aliens or narcotics in the area; and (8) the number of passengers and their appearance and behavior.
United States v. Cervantes , 797 F.3d 326, 329 (5th Cir. 2015) (quoting United States v. Soto , 649 F.3d 406, 409 (5th Cir. 2011) ).
"No single factor is determinative; the totality of the particular circumstances must govern the reasonableness of any stop by roving border patrol officers."[5] The totality of the circumstances standard specifically precludes a "divide-and-conquer analysis," District of Columbia v. Wesby , --- U.S. ----, 138 S.Ct. 577, 588, 199 L.Ed.2d 453 (2018) (quoting Arvizu , 534 U.S. at 274, 122 S.Ct. 744 ), or an "excessively technical dissection," id. (quoting Illinois v. Gates , 462 U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). Instead, it "requires courts to consider 'the whole picture.' " Id. (quoting Cortez , 449 U.S. at 417, 101 S.Ct. 690 ). "A factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." Id. at 589 (quoting Arvizu , 534 U.S. at 274, 122 S.Ct. 744 ).
I.
A.
Based on the facts in the record and the evidence from the suppression hearing, the magistrate judge determined that Perez had reasonable suspicion to believe that illegal activity was occurring when he stopped Freeman. Those findings with respect to the Brignoni-Ponce factors, as well as our related precedents, are summarized below:
• (1) The area's proximity to the border . "This Court has repeatedly stated that '[t]he first factor, proximity to the border, is a "paramount factor" in determining reasonable suspicion.' " Cervantes , 797 F.3d at 340 (quoting United States v. Orozco , 191 F.3d 578, 581 (5th Cir. 1999) ). Additionally, "a vital element of the Brignoni-Ponce test is whether the agent had 'reason to believe that the vehicle [in question] had come from the border.' " United States v. Garcia , 732 F.2d 1221, 1223 (5th Cir. 1984) (quoting United States v. Lamas , 608 F.2d 547, 549 (5th Cir. 1979) ). We have also held that "[t]he proximity element is satisfied ... if *350 the defendant's car was first observed within 50 miles of the United States/Mexico border, but was stopped more than 50 miles from the border." United States v. Jacquinot , 258 F.3d 423, 428 (5th Cir. 2001). In this case, the magistrate judge correctly found that "it is undisputed that [Freeman's] vehicle was observed traveling on U.S. Highway 59 and detouring before the checkpoint, which is within the fifty mile benchmark." This factor weighs in favor of reasonable suspicion.
• (2) Characteristics of the area . We have repeatedly recognized that FM 2050 is a popular route for smugglers of illegal aliens and narcotics because it allows smugglers to avoid the Border Patrol checkpoint on Highway 59.[6] Moreover, "[i]t is well established that a road's reputation as a smuggling route adds to the reasonableness of the agents' suspicion." Jacquinot , 258 F.3d at 429 (quoting United States v. Zapata-Ibarra , 212 F.3d 877, 881-82 (5th Cir. 2000) ). FM 2050 is sparsely populated, with "perhaps a dozen" residences, some oil-and-gas interests, and a wind farm. No retail businesses are found on FM 2050, a thirty-plus mile stretch of road. This factor weighs in favor of reasonable suspicion.
• (3) Usual traffic patterns . We have previously determined that "FM 2050 is not well-traveled." De Leon-Reyna , 930 F.2d at 397 n.1. As the magistrate judge noted, the road "traverses a sparsely populated area and is not a direct route for vehicles traveling from Laredo to Houston on U.S. Highway 59, or to the nearby town of Hebbronville on State Highway 359." Furthermore, as Perez indicated, Freeman's vehicle was registered in Houston. Consequently, Freeman's deviation from the most direct route from Laredo to Houston (northwest on Highway 59) by turning right on FM 2050 (which heads due south away from Houston and adds almost an hour to the trip), rightly raised Perez's suspicion. See Zapata-Ibarra , 212 F.3d at 883-84. This factor weighs in favor of reasonable suspicion.
• (4) The agents' experience in detecting illegal activity. At the time Freeman's vehicle was stopped, Perez had spent over eight years as a United States Border Patrol Agent at the Freer checkpoint on Highway 59. He is a graduate of the border patrol academy, a three-month program, and is entrusted with the enforcement of immigration laws, which is his "main job title." Perez patrolled FM 2050, at times, on a daily basis. "[A]n officer's experience is a contributing factor in determining whether reasonable suspicion exists." United States v. Garza , 727 F.3d 436, 441 (5th Cir. 2013) (quoting Zapata-Ibarra , 212 F.3d at 883-84 ). That Perez had conducted only twenty to thirty roving stops during his eight years as a Border Patrol agent does not, as the majority asserts, suggest that "Agent Perez had very *351 little experience detecting illegal activity."[7] Moreover, we have spoken clearly on this issue: "[T]he totality of the circumstances should reflect the outcome of a process in which 'officers [ ] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.' " United States v. Neufeld-Neufeld , 338 F.3d 374, 379 (5th Cir. 2003) (quoting Arvizu , 534 U.S. at 273, 122 S.Ct. 744 ). This factor weighs in favor of reasonable suspicion.
• (5) Behavior of the driver . Perez testified that when he first observed Freeman's vehicle "it appeared to be swaying side to side within the lane, getting off to the soft shoulder and creating dust clouds," and at one point drove off the road by taking the inside corner of a turn. He stated that Freeman repeatedly checked his side view mirrors and "[a]ppeared to be nervous." Perez also testified that he traveled at speeds in excess of 100 miles per hour, frequently checking his speedometer, for several minutes to catch up with Freeman. From this, he inferred that Freeman was speeding. Miriam Rivera-Quintero, a passenger in Freeman's truck, testified that she did not think Freeman was driving erratically but acknowledged that she was focused on looking at pictures on her cell phone to calm herself down.[8] She did not see the speedometer. Even when viewing the facts in a light most favorable to Freeman, including accepting that Freeman may not have been speeding, this factor weighs in favor of reasonable suspicion.
• (6) Particular aspects or characteristics of the vehicle . A vehicle's characteristics may help establish reasonable suspicion. See Jacquinot , 258 F.3d at 430 ; De Leon-Reyna , 930 F.2d at 397 -98. The border patrol agents ran a check on Freeman's license plate and determined that the vehicle (a truck) was registered to an individual in Houston. Although Freeman's white truck was similar in appearance to those vehicles used by employees of oil-and-gas companies operating in the area, those vehicles are generally registered to the companies and not to individuals. Perez did not recognize Freeman's vehicle. Moreover, the truck had temporary paper plates as distinguished from permanent "tin" plates. Perez testified that temporary plates are a common device used by illegal alien and narcotics traffickers "to avoid an inspection or suspicion" because the database for temporary plates is sometimes "not updated properly." This factor weighs in favor of reasonable suspicion.
*352 • (7) Information about recent illegal trafficking of aliens or narcotics in the area . There is no evidence in the record concerning whether the agents had information concerning recent illegal activity in the area. Therefore, this factor does not weigh in favor of reasonable suspicion. But we have also held that "[n]ot every Brignoni-Ponce factor need weigh in favor of reasonable suspicion for it to be present, nor does the Fourth Amendment require law enforcement to eliminate all reasonable possibility of innocent travel before conducting an investigatory stop." Zapata-Ibarra , 212 F.3d at 884.
• (8) The number of passengers and their appearance and behavior. Because Perez was unable to observe the number of passengers, their appearance, or behavior, this factor does not weigh in favor of reasonable suspicion. In any event, however, the absence of this factor does not, under this court's precedent, weigh against a finding of reasonable suspicion. Id.
B.
Brignoni-Ponce requires that we weigh this evidence in light of "the 'laminated' totality of the facts and circumstances." Id. "The 'totality of the circumstances' requires courts to consider 'the whole picture.' " Wesby , 138 S.Ct. at 588 (quoting Cortez , 449 U.S. at 417, 101 S.Ct. 690 ). Supreme Court precedent in this area "recognize[s] that the whole is often greater than the sum of its parts-especially when the parts are viewed in isolation." Id. ; see also Arvizu , 534 U.S. at 277-78, 122 S.Ct. 744.
Although the district court did not conduct a hearing and made no explicit factual findings in its suppression order, it declined to adopt the magistrate judge's report and recommendation, instead noting that it "agree[d] with the Defendant's examination of the Brignoni-Ponce factors under the particular facts of this case." The district court's de novo review of this factually-intensive issue was stated, in its entirety, in a single paragraph:
After reviewing the entire record-including the [m]otion to [s]upress, the suppression hearing, the [report and recommendation], the objection, and all the relevant authorities ... the Court ... disagrees with the recommendation regarding the February 13th stop. Although the Court believes that the agents had good intentions and realizes that they oftentimes face difficult challenges in performing their duties, Agent Perez admitted that Border Patrol conducts roving patrol stops on all vehicles making the turn from U.S. Highway 59 onto FM 2050. Considering this admission in light of all the other relevant facts and circumstances involved here, the Court finds the analysis provided in Defendant's objection to the [report and recommendation] persuasive. To be clear, the Court does not hinge its decision solely on Agent Perez's admission; this is merely one aspect taken into consideration. Ultimately, on de novo review, the Court agrees with Defendant's examination of the Brignoni-Ponce factors under the particular facts of the case.
In his objection to the report and recommendation of the magistrate judge, Freeman analyzes each Brignoni-Ponce factor in isolation despite the Supreme Court's admonishment against a "divide-and-conquer analysis," Wesby , 138 S.Ct. at 588 (quoting Arvizu , 534 U.S. at 274, 122 S.Ct. 744 ), or an "excessively technical dissection," ids="9108176" index="144" url="https://cite.case.law/us/534/266/#p273">id. (quoting Gates , 462 U.S. at 234, 103 S.Ct. 2317 ). Reviewing each factor separately, Freeman avers that none of the *353 evidence "weigh[s] in favor of reasonable suspicion."[9] As the government correctly asserts, "Freeman's objections to the [report and recommendation] marched through the various factors relied upon by the magistrate judge and essentially argued that each individual factor, standing alone, could not give rise to reasonable suspicion." The Supreme Court precisely rejected that method of analysis:
We think that the approach taken by the [Court of Appeals] here departs sharply from the teachings of these cases. The court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances,' as our cases have understood that phrase. The court appeared to believe that each observation by [the Border Patrol Agent] that was by itself readily susceptible to an innocent explanation was entitled to 'no weight.'
Arvizu , 534 U.S. at 274, 122 S.Ct. 744.
Because Freeman, and consequently, the district court, failed properly to review the Brignoni-Ponce factors based on the totality of the circumstances, the majority should have reversed the suppression ruling and correctly applied the relevant legal test.
C.
Unfortunately, the majority commits the same mistake as the district court, engaging in an excessively technical dissection and failing faithfully to adhere to Supreme Court precedent, including Arvizu and Wesby . The majority thus commits two errors.
First, it "view[s] each fact 'in isolation, rather than as a factor in the totality of the circumstances.' " Wesby , 138 S.Ct. at 588. Although the majority claims that it examines the factors as a laminated total, in reality it marches through the Brignoni-Ponce factors one-by-one before hastily concluding that "these facts, without more, are not enough to support reasonable suspicion, especially when viewed through the eyes of an agent with minimal experience detecting illegal activity." The majority does not analyze the factors in conjunction with one another and thus fails to "recognize that the whole is often greater than the sum of its parts-especially when the parts are viewed in isolation." Id. "Instead of considering the facts as a whole," the majority takes them "one by one." Id ."The totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis.' " Id. (quoting Arvizu , 534 U.S. at 274, 122 S.Ct. 744 ).
Second, as was the case in Wesby , the majority "believe[s] that it [can] dismiss outright any circumstances that [are] 'susceptible of innocent explanation.' " Id . Of course, "[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." Id . at 589 (quoting Arvizu , 534 U.S. at 274, 122 S.Ct. 744 ).
For example, with respect to the particular aspects or characteristics of the vehicle, *354 the majority-viewing the factor in isolation-inexplicably concludes that "Agent Perez did not find the temporary plates to be suspicious." Such a conclusion is directly contradicted by Perez's testimony.
The majority's mental gymnastics continue when it finds that paper plates do not contribute to reasonable suspicion if a check on the plate turns up current information. This finding flatly ignores Perez's concern that Freeman's white pickup, a common oilfield vehicle in the area, was registered to a person in Houston instead of to a company. The majority, unsurprisingly, fails to address this piece of evidence. It then makes the bald assertion that this court cannot assume that it is suspicious to take an indirect route to where a vehicle is registered-a contention contradicted by both Supreme Court and Fifth Circuit precedent.[10] Certainly, an indirect route, standing alone, would not be enough to justify a finding of reasonable suspicion, but when viewed alongside several other pieces of evidence through the lens of an experienced Border Patrol agent, it quickly becomes sufficient. And therein lies the majority's error, a mistake it repeats throughout its opinion.
Ultimately, "[t]he circumstances here certainly suggested criminal activity." Wesby , 138 S.Ct. at 589. An experienced agent headed out to investigate a truck that he did not recognize. The pickup was first spotted within fifty miles of the border, traveling northwest toward Houston. This is a paramount factor when reviewing an officer's reasonable suspicion determination near the border. The pickup then turned right off Highway 59, thereby avoiding the checkpoint, and onto FM 2050, where-in a reversal of direction-it began heading due south away from Houston. FM 2050 is sparsely populated with no retail businesses. Such a deviation adds roughly an hour to the trip from Laredo to Houston. The area in question is well-traveled by smugglers of illegal aliens and narcotics.
After catching up with the Freeman's vehicle, Perez noticed that it was fitted with a paper license plate, a tactic often used by smugglers to avoid inspection or suspicion. After his partner checked the vehicle's plate, they determined that it was registered to an individual in Houston, unlike most pickup trucks in the area, which are registered to oil-and-gas companies. Meanwhile, Freeman repeatedly checked his rearview mirror, drifting from side to side, and appeared to be nervous. At one point, Freeman drove off the road by taking the inside corner of a turn.
"Undoubtedly, each of these factors alone is susceptible of innocent explanation, and some factors are more probative than others." Arvizu , 534 U.S. at 277, 122 S.Ct. 744. Taken together, however, "they sufficed to form a particularized and objective basis for [Perez's] stopping the vehicle, making the stop reasonable within the meaning of the Fourth Amendment." Id . at 277-78, 122 S.Ct. 744.
Accordingly, "[c]onsider[ing] the totality of the circumstances and giv[ing] due weight to the factual inferences drawn by [Perez]," ids="9108176" index="160" url="https://cite.case.law/us/534/266/#p273">id. at 277, 122 S.Ct. 744, the majority should have held that Perez "had reasonable suspicion to believe that [Freeman] was engaged in illegal activity." Id. "It was reasonable for [Perez] to infer from his observations, his registration check, and his experience as a border patrol agent," id ., that Freeman turned right onto FM 2050-"a little-traveled route *355 used by smugglers"-to circumvent the Freer checkpoint. Id . The majority's determination otherwise, particularly when viewed in light of recent Supreme Court precedent, is undoubtedly curious.[11]
D.
The majority commits one final error by dismissing, as "largely irrelevant," the district court's failure to apply Whren faithfully. In Whren , 517 U.S. at 813, 116 S.Ct. 1769, the Court determined that its precedent "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." Consequently, an officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id .
The district court stated that it based its decision on Perez's admission "that Border Patrol conducts roving patrol stops on all vehicles making the turn from U.S. Highway 59 onto FM 2050." The court qualified that statement-maybe an implicit acknowledgement of Whren -by noting that it did "not hinge its decision solely on Agent Perez's admission; this is merely one aspect taken into consideration." But when read in context, Brignoni-Ponce eschews such an approach.
As the government correctly highlights, "[w]hether the Border Patrol routinely pulls over every car turning right down FM 2050 is irrelevant so long as the stop is objectively supported by reasonable suspicion." Moreover, we have consistently affirmed that an officer's subjective state of mind is irrelevant for purposes of the Fourth Amendment, provided that "the circumstances, viewed objectively, justify the action."[12] Viewed objectively, the evidence provided the reasonable suspicion necessary for Perez to stop Freeman's vehicle. Because the district court, at least in part, erroneously based its decision to suppress on its perception of Perez's subjective motivations, the court committed reversible legal error.
II.
It is obvious that the majority's decision-and that of the district court-were influenced by Perez's candid admission that border patrol agents at the Freer checkpoint conduct roving stops on all vehicles turning onto FM 2050. Regardless of whether that practice, official or unofficial, is good public policy, we are bound by the Supreme Court's repeated insistence that an officer's subjective motives play no role in whether he violated the Fourth Amendment.
We must focus, therefore, on whether Perez had reasonable suspicion to believe that Freeman was engaged in illegal activity. Ultimately, the record plainly supports such a finding. I respectfully dissent.

Following its decision on the motion to suppress, the district court stated, "I'm satisfied that if this case-well, if my decision gets affirmed, then the Government's not going to have any evidence against you...."

United States v. Brignoni-Ponce , 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

United States v. Arvizu , 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting U.S. Const. amend. IV ); see also Terry v. Ohio , 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

See Brignoni-Ponce , 422 U.S. at 884-85, 95 S.Ct. 2574 ; see also United States v. Rangel-Portillo , 586 F.3d 376, 379 (5th Cir. 2009) ("To temporarily detain a vehicle for investigatory purposes, a Border Patrol agent on roving patrol must be aware of 'specific articulable facts' together with rational inferences from those facts, that warrant a reasonable suspicion that the vehicle is involved in illegal activities, such as transporting undocumented immigrants." (quoting United States v. Chavez-Chavez , 205 F.3d 145, 147 (5th Cir. 2000) ) ).

Soto , 649 F.3d at 409 (quoting United States v. Moreno-Chaparro , 180 F.3d 629, 631-32 (5th Cir. 1998) ); see also United States v. Sokolow , 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (finding that each individual factor alone was "quite consistent with innocent travel," but when "taken together [the circumstances] amount to reasonable suspicion that criminal activity was afoot"); Cervantes , 797 F.3d at 329 ("[This court] look[s] to the totality of the circumstances, and not every factor must weigh in favor of reasonable suspicion for it to be present. 'Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers.' " (quoting United States v. Olivares-Pacheco , 633 F.3d 399, 402 (5th Cir. 2011) ) ); United States v. Rodriguez , 564 F.3d 735, 741 (5th Cir. 2009) ("No single factor is dispositive, and each case must be examined based on the totality of the circumstances known to the agents at the time of the stop and their experience in evaluating such circumstances.").

See , e.g. , United States v. Rodriguez , 585 F. App'x 307, 308 (5th Cir. 2014) (per curiam); United States v. Delgado , 99 F. App'x 493, 495 (5th Cir. 2004) (per curiam); United States v. Canales , No. 94-60739, 1995 WL 450255, at *3 (5th Cir. July 7, 1995) ; United States v. De Leon-Reyna , 930 F.2d 396, 397 (5th Cir. 1991) (en banc) (stating that FM 2050 is "a known alternative route of drug and alien smugglers seeking to avoid nearby Border Patrol checkpoints"). Canales is binding precedent. See 5TH Cir. Rule 47.5.3 ("Unpublished opinions issued before January 1, 1996, are precedent.").

As the government correctly notes, this court has often credited, in the context of a Brignoni-Ponce analysis, the experience of agents with less seniority than Perez's. See , e.g. , United States v. Ramirez , 839 F.3d 437, 439 (5th Cir. 2016) (crediting, as part of our reasonable experience analysis, the experience of an agent who had been on the job for six years); Garza , 727 F.3d at 441 (three years); Jacquinot , 258 F.3d at 429 (three years).

The majority claims that the magistrate judge "pressed" Perez while he was on the stand, perhaps to cast doubt on the validity of his testimony. The majority glosses over the fact that the magistrate judge reprimanded Freeman's attorney for asking leading questions during the direct examination of Rivera-Quintero. The magistrate judge stated, "Mr. Guerra, your questions are leading and she's a witness."

Examples include (1) "that the vehicle was in close proximity to the border should not weigh in favor of a finding of reasonable suspicion in this case"; (2) "that Mr. Freeman's vehicle was registered out of Houston, and that FM 2050 was not a direct route to Houston, should not weigh in favor of reasonable suspicion"; (3) "that Mr. Freeman's truck was not registered to a business should not weigh in favor of a reasonable suspicion"; (4) "BPA Perez's experience should not weigh in favor of reasonable suspicion"; (5) "BPA Perez's determination of the Defendant's speed and 'erratic driving' should not weigh in favor of reasonable suspicion"; (6) "Mr. Freeman's act of looking at the side-view mirror or weaving cannot be considered as suspicious...."; and (7) "[t]he remaining Brignoni-Ponce factors are not applicable in this case."

Compare Arvizu , 534 U.S. at 269, 271-72, 277, 122 S.Ct. 744, and Zapata-Ibarra , 212 F.3d at 879, 883-84, with United States v. Escamilla , 560 F.2d 1229, 1232 (5th Cir. 1977).

"[T]he right to be free from unwarranted police intrusion does not completely dissipate near the border." Garza , 727 F.3d at 443-44 (Elrod, J., dissenting). But this case is not, as the majority claims, "closely analogous" to Rangel-Portillo , 586 F.3d at 380-81. In that case, we could not "conclude that an agent has reasonable suspicion to conduct a stop anytime an individual is sweating while riding in a vehicle in close proximity to this nation's southern border."Id. at 382. Such facts are hardly analogous to those at issue here.

E.g. , United States v. Lopez-Moreno , 420 F.3d 420, 432 (5th Cir. 2005) ; Goodwin v. Johnson , 132 F.3d 162, 173 (5th Cir. 1997) ; see also Scott , 436 U.S. at 138, 98 S.Ct. 1717 ("[T]hat the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.").