# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50668
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 23, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

SERGIO ZAMORA, JR.,

      Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:18-CR-2556-1

Before JOLLY, JONES, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Sergio Zamora appeals his conviction for possession of marijuana with intent to distribute on the ground that the Border Patrol agent who conducted the traffic stop that led to his arrest lacked reasonable suspicion in violation of the Fourth Amendment. Zamora argues that the district court erred by denying his motion to suppress evidence seized as a result of the stop. Finding no error, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-50668

## BACKGROUND

The relevant facts are undisputed. Early one morning in August 2018, a few minutes before 5:00 a.m., a sensor deployed by the United States Border Patrol to detect activity along the border went off. The sensor was approximately 10 miles east of the Fort Hancock, Texas, port of entry. At 5:05 a.m., Agent Robert Cardiel responded to the area of the sensor activation and discovered two sets of horse prints heading north from the US/Mexico border. This section of the border and Interstate 10 run roughly parallel, between two and three miles apart. Using his radio, Agent Cardiel alerted other agents in the area.

Agent Oscar Pinon heard the notification about the sensor and the hoof prints. Entering Interstate 10 at mile marker 78, Agent Pinon drove east toward mile marker 81, the point toward which the horses appeared to be traveling. It was pitch dark at that hour of the morning, and there was no lighting in that section of roadway. Agent Pinon saw the brake lights of a vehicle on the shoulder of the interstate parked near mile marker 81, directly north of where Agent Cardiel found the hoof prints and exactly where Agent Cardiel said the horses were headed. As Agent Pinon approached, the vehicle entered Interstate 10, exited almost immediately, turned around on an overpass, and began heading westbound on Interstate 10 toward Fort Hancock. Agent Pinon crossed the median and began following the vehicle, a white Dodge pickup. He activated his emergency lights, called dispatch to request a check on the license plate, and learned the truck was registered to someone in Fort Hancock.

After following the truck for several miles, Agent Pinon pulled the truck over. A strong odor of marijuana wafted from the vehicle, and Agent Pinon asked Zamora for permission to search the truck. Zamora consented to the search and informed Agent Pinon before his search began that there were

2

drugs in the truck.  Agent Pinon discovered 73.68 kilograms of marijuana in the bed of the truck and arrested Zamora.

During the evidentiary hearing, Agent Pinon testified that the following facts contributed to his suspicion that criminal activity was afoot.  The area Agent Pinon first saw Zamora is in close proximity to the border and is a known corridor for narcotics and alien smuggling.  The time of day—5:00 a.m.—meant that it was very dark, and it was close to a shift change.  In Agent Pinon's experience, the timing was significant because smugglers often try to take advantage of shift changes because of the increased delay in the agents' response time.  Zamora's vehicle was parked directly north of where the hoofprints were headed.[1]  Agent Pinon explained that smugglers frequently use this section of Interstate 10 to load vehicles with smuggled drugs or people.  Typically, smugglers turn around and drive west after loading in order to avoid a Border Patrol checkpoint to the east.  Pickup trucks are easy to load, and white is a color commonly used by drug smugglers in that area.  Based on these observations, Agent Pinon stopped the truck.  From the foregoing facts, the district court held that Agent Pinon had a reasonable suspicion to stop Zamora and denied the motion to suppress.

The district court then held a bench trial on stipulated facts.  The court found Zamora guilty and sentenced him to five years' probation.  During trial, Zamora expressly reserved his right to appeal the denial of his motion to suppress. Zamora now appeals that decision.

## DISCUSSION

"When reviewing a denial of a motion to suppress evidence, this Court reviews factual findings for clear error and the ultimate constitutionality of

---

[1] Zamora was parked on the eastbound side of the interstate, the side closer to the border.

law enforcement action de novo." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). "Factual findings are clearly erroneous only if a review of the record leaves this Court with a definite and firm conviction that a mistake has been committed." *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (internal quotation marks and citation omitted). We view evidence presented at a pre-trial hearing on a motion to suppress in the light most favorable to the prevailing party, *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010), and "[w]here a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses," *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). "[I]f there is any reasonable view of the evidence to support it," the district court's denial of a suppression motion should be upheld. *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc) (internal quotation marks and citation omitted).

"A temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes and must be justified by reasonable suspicion that criminal activity has taken or is currently taking place . . ." *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013). "A border patrol agent conducting a roving patrol may make a temporary investigative stop of a vehicle only if the agent is aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle's occupant is engaged in criminal activity." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001); *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S. Ct. 2574, 2582 (1975). "Reasonable suspicion requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *Garza*, 727 F.3d at 440 (internal quotation marks and citation omitted).

No. 19-50668

When determining whether reasonable suspicion existed, we examine the totality of the circumstances and weigh the factors established in *Brignoni-Ponce.*

> Factors that may be considered include: (1) the characteristics of the area in which the vehicle is encountered; (2) the arresting agent's previous experience with criminal activity; (3) the area's proximity to the border, (4) the usual traffic patterns on the road; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) the appearance of the vehicle; (7) the driver's behavior; and, (8) the passengers' number, appearance, and behavior.

*United States v. Hernandez*, 477 F.3d 210, 213 (5th Cir. 2007); s*ee also United States v. Cervantes*, 797 F.3d 326, 329 (5th Cir. 2015).  These factors are not exclusive nor is any single factor dispositive.  "[E]ach case must be examined based on the totality of the circumstances known to the agents at the time of the stop and their experience in evaluating such circumstances." *United States v. Rangel-Portillo*, 586 F.3d 376, 380 (5th Cir. 2009).  "Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers."  *Jacquinot*, 258 F.3d at 427–28.

In the instant case, the district court found that the totality of the circumstances provided Agent Pinon with reasonable suspicion, warranting his stop of Zamora.  We agree.  Agent Pinon encountered Zamora along a stretch of interstate well known as a drug trafficking corridor and loading zone.  *See Garza*, 727 F.3d at 440 (holding that an "area's reputation as a smuggling route support[ed] [an agent's] reasonable suspicion").  Agents Pinon and Cardiel have fifteen and fourteen years of experience, respectively, as Border Patrol agents in the Fort Hancock area.  Such experience "inform[s] our assessment of the circumstances likely to arouse suspicion in the area." *Id.* at 441.  Drawing upon this experience, Agent Pinon testified that drug smugglers

5

often transport their illicit wares to waiting vehicles on Interstate 10 and then return over the border to avoid detection by the border patrol. The interstate's proximity to the border facilitates this pattern of activity. At mile marker 81, Interstate 10 is three miles or less from the border. *See id.* (holding that "[p]roximity to the border is a paramount factor" (internal quotation marks and citation omitted)). Agent Pinon also explained that smugglers along this stretch of highway frequently turnaround and drive westbound in order to avoid the Border Patrol checkpoint east of Fort Hancock, exactly as Zamora did here. Additionally, the color and type of vehicle Zamora was driving contributed to Agent Pinon's suspicion because drug smugglers commonly used vehicles with those characteristics.

The fifth factor—information about recent illegal trafficking in the area—is especially important in this case. Agent Pinon did not just happen upon Zamora; instead, Agent Pinon was responding to a radio call offering specific information about potential trafficking activity heading for the precise location he encountered Zamora. Zamora counters that there was no evidence of illegal activity, but Agent Pinon testified that horseback riders were uncommon in that area, especially at 5:00 a.m. Moreover, Agent Pinon knew that a sensor had indicated activity along the border at a time of night offering traffickers the advantages of darkness and an impending Border Patrol shift change. In sum, Agent Pinon encountered a vehicle that he had strong reason to suspect of being involved in drug trafficking that he then observed following a pattern of behavior typical of drug traffickers. We therefore agree with the district court that Agent Pinon acted on more than "an unparticularized hunch." *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir.1999).

Zamora offers two counterarguments. First, he contends that the vast majority of the traffic along Interstate 10 is for innocent purposes. Second, he asserts that nothing specific about his behavior or the vehicle could supply

reasonable suspicion. The first argument disregards the fact that the reasonable suspicion analysis considers the combination of factors leading to an investigatory stop. *Cervantes*, 797 F.3d at 329 ("We look to the totality of the circumstances, and not every factor must weigh in favor of reasonable suspicion for it to be present."). We have previously opined that "the possibility that [a defendant] could have been an innocent traveler" does not negate other factors supporting reasonable suspicion. *United States v. Villalobos*, 161 F.3d 285, 289 (5th Cir. 1998). Here, Agent Pinon had ample reason to suspect that Zamora was not merely an innocent traveler. The second argument likewise fails because Agent Pinon testified to specific reasons that a white pickup truck and Zamora's pattern of behavior were significant to him.

Under the totality of the circumstances, considered in connection with the *Brignoni–Ponce* factors, we conclude that Agent Pinon had reasonable suspicion to stop Zamora's truck.

## CONCLUSION

For the above reasons, the district court's order denying Zamora's motion to suppress is **AFFIRMED**.